**In re Appeal of GRAEME and Mary Beth Freeman, et al.**

**No. 2:96–CV–295.**

United States District Court, D. Vermont.

Aug. 11, 1997.

Gerald Roland Tarrant, Tarrant, Marks & Gillies, Montpelier, VT, for Appellants.

John Powers Cain, McCormick, Fitzpatrick, Kasper & Buchard, Burlington, VT, Thomas F. Heilmann, Heilmann, Ekman & Assoc., Burlington, VT, Brian J. Sullivan, Burak, Anderson & Melloni, PLC, Burlington, VT, for Appellees.

### OPINION AND ORDER

SESSIONS, District Judge.

This action is an appeal from a decision by the Town of Charlotte Zoning Board of Adjustment ("ZBA") finding that it had no jurisdiction to enforce its requirement that the users of a telecommunications tower remedy any radio frequency interference ("RFI") experienced by the residents of the town. The users of the tower, Burlington Broadcasters, Inc., d/b/a WIZN–FM ("WIZN"), NYNEX Mobile Limited Partnership 1 d/b/a Bell Atlantic NYNEX Mobile ("BANM"), and Charlotte Volunteer Fire and Rescue Services, Inc. ("CVFRS"), seek dismissal of the action on the grounds that the Federal Communications Commission ("FCC") has exclusive jurisdiction over complaints involving RFI.

---

1. RFI arises when a signal radiated by a transmitter is picked up by an electronic device in such a manner that it prevents the clear reception of another signal or causes malfunction of

### I. *Factual Background*

WIZN operates an FM radio station and is licensed by the FCC to broadcast from an approximately 199 foot radio transmission tower on Pease Mountain in Charlotte, Vermont. BANM transmits cellular calls from four thirteen foot "whip" antennas mounted halfway up the tower. CVFRS makes intermittent use of the tower in connection with providing fire and ambulance service for the town.

In 1986 WIZN and CVFRS received zoning approval from the Town of Charlotte to build the Pease Mountain tower. At a hearing in connection with the zoning permit to build the tower, community residents raised concerns about RFI.[1] According to the minutes of the meeting, WIZN's representative, Michael Calhoun, stated that there would not be any interference, and if there was, WIZN would "trap it out." (paper 19, att. B). WIZN and CVFRS received approval to construct the tower, on the condition that "[a]ny interference with reception in homes in the area because WIZN begins broadcasting will be remedied by WIZN. WIZN will broadcast 50,000 watts per day." *Id.*

After the tower was built, WIZN conveyed ownership of the tower to CVFRS. In April 1987 WIZN began broadcasting from the tower. In 1991 BANM (formerly Contel Cellular) and CVFRS received zoning approval from the ZBA to mount the whip antennas. The ZBA placed no conditions respecting RFI on the approval.

On April 5, 1996, the Charlotte Zoning Administrator issued a notice of violation to WIZN, BANM, CVFRS and the landowner. According to the notice, the operation of the broadcast facility had caused "long-term and continuous" interference with electronic devices and other appliances, in violation of the terms and conditions of ZBA approvals and permits, which required that any RFI would be remedied by the users.

WIZN, BANM, CVFRS, and the landowner appealed the notice of zoning violation to the ZBA. The ZBA conducted public hear-

the electronic device. H.R. Conf. Rep. No. 97–765, at 11 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2261.

ings in May, 1996, pursuant to Vt. Stat. Ann. tit. 24, § 4467 (Supp.1996). A group of "interested persons" as defined in Vt. Stat. Ann. tit. 24, § 4464(b) (Supp.1996) ("the Freemans" or "the Neighbors") appeared and were heard at these proceedings. At the hearings, Charlotte residents identified RFI problems with "various electrical and electronic devices, including but not limited to telephones, answering machines, radios, stereos and tape machines, public address systems, televisions and VCRs, baby monitors, computers and security systems." Notice of Decision at 4 (paper 1, att. 2).

On July 11, 1996 the ZBA issued its Notice of Decision. The ZBA found "that WIZN has caused continuous and widespread RFI that has impaired the ability of Charlotte residents to communicate, transact business, and experience the peaceful enjoyment of their homes and property." *Id.* It found no credible evidence that CVFRS, BANM or the landowner had caused RFI in Charlotte.

The ZBA concluded that WIZN had violated the terms of its conditional use approval and of its zoning permit. It concluded further, however, that the FCC has exclusive jurisdiction over RFI phenomena, and that the ZBA had no authority to enforce a permit condition requiring WIZN to remedy any interference problems. Accordingly, it dismissed the Notice of Violation.

The Neighbors appealed the ZBA decision to the Vermont Environmental Court pursuant to Vt. Stat. Ann. tit. 24 § 4471 (Supp. 1996). They raised the following issues on appeal: whether federal law preempts state and local jurisdiction over RFI; whether BANM or CVFRS caused RFI in Charlotte; whether BANM and CVFRS, as co-permittees of WIZN, bore responsibility for WIZN's permit violations; whether there is state or local jurisdiction over an allegation of fraud, deceit or misrepresentation; and whether Charlotte residents have been denied their rights as consumers.

WIZN, BANM, CVFRS and the landowner removed the case to this Court, asserting

**2.** CVFRS has joined in both motions (paper 16).

**3.** The Town of Charlotte opposed the dismissal as well, but has orally sought and received this

that the case concerned a claim arising under the Federal Communication Act of 1934 (as amended) ("FCA"), 47 U.S.C. §§ 151–613 (1991 and Supp.1997).

Before the Court are WIZN's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (paper 13), and BANM's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (paper 14).[2] Specifically, WIZN and BANM contend that the Federal Communications Act preempts the Neighbors' zoning appeal. The Neighbors oppose the dismissal, and seek a remand to the ZBA.[3]

## II. *Discussion*

### A. *Subject matter jurisdiction standard*

BANM has challenged this Court's subject matter jurisdiction over this zoning appeal. In ruling on a motion to dismiss under Fed. R.Civ.P. 12(b)(1), the allegations of the complaint are to be construed favorably to the pleader. The issue is not whether claimants will ultimately prevail, but whether they are entitled to offer evidence to support their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). For the purposes of this motion to dismiss, therefore, the Court accepts the Neighbors' factual allegations as true.

### B. *Preemption*

Congressional intent is the "ultimate touchstone" of preemption analysis. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). That intent may be

> explicitly stated in the statute's language or implicitly contained in its structure and purpose. In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Con-

court's permission to withdraw from the case. Consequently its opposition is moot.

gress left no room for the States to supplement it.

*Id.* (citations omitted).

██ The Federal Communications Act of 1934 (as amended) does not contain an express provision preempting state or local regulation of radio frequency interference. Therefore, to determine whether preemption is implied, the Court must analyze whether Charlotte's zoning permit condition actually conflicts with federal law, or if federal law occupies the field of radio frequency interference so thoroughly that state or local regulation is precluded.

In enacting the Communications Act of 1934, Congress created a "unified and comprehensive regulatory system" for the broadcasting industry. *National Broadcasting Co. v. United States,* 319 U.S. 190, 214, 63 S.Ct. 997, 1008, 87 L.Ed. 1344 (1943). In Section 301 of the Act, Congress stated that the purpose of Act was "among other things, to maintain the control of the United States over all the channels of radio transmission." 47 U.S.C. § 301 '(1991).

In Section 151 of the Act, Congress created the FCC to "execute and enforce the provisions" of the Act. 47 U.S.C. § 151 (Supp.1997). Congress endowed the FCC with "comprehensive powers to promote and realize the vast potentialities of radio." *National Broadcasting,* 319 U.S. at 217, 63 S.Ct. at 1010. The Supreme Court made clear in *National Broadcasting* that the Commission is empowered to deal with "technical and engineering impediments" to the "effective use of radio in the public interest." *Id. See also FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 138, 60 S.Ct. 437, 439, 84 L.Ed. 656 (1940) (Communications Act expressed Congress's desire to maintain, through administrative control, grip on dynamic aspects of radio transmission); *Head v. New Mexico Bd. of Examiners,* 374 U.S. 424, 430, n. 6, 83 S.Ct. 1759, 1763, n. 6, 10 L.Ed.2d 983 (1963) (FCC's jurisdiction over technical matters associated with transmission of radio signals is clearly exclusive).

The FCC has been given statutory authority to regulate the transmission of radio energy that creates interference in 47 U.S.C. § 301, § 302a(a)(1), and § 303(c), (d), (e) and (f) (1991 and Supp.1997). The Neighbors argue, however, that their complaints of RFI have interfered with business and institutional equipment in the town, and that the ZBA has the authority under 47 U.S.C. § 302a (1991) to regulate RFI that affects business and institutional electronic devices as opposed to home electronic devices.

Section 302a(a)(2) of Title 47 of the United States Code authorizes the FCC to make reasonable regulations "establishing minimum performance standards for home electronic equipment and systems to reduce their susceptibility to interference" from RFI. Section 302a(a)(1) authorizes the FCC to regulate any devices which are capable of transmitting radio frequency energy which could harm radio communications. The statute does not authorize the FCC to establish performance standards for commercial and business electronic equipment. From this statutory silence, the Neighbors have inferred that the regulation of RFI which affects commercial and business electronic equipment is within the purview of state and local authorities. Section 302a does not purport to regulate radio stations which may produce interference, however, but only to regulate devices which interfere with radio reception or home electronic devices which are susceptible to RFI.

Although Congress has not enacted a specific statute that explicitly authorizes the FCC to regulate radio station RFI that affects business and commercial electronic devices, it clearly intends that the FCC have exclusive jurisdiction over RFI in general. With the enactment of the Communications Amendments Act of 1982, which amended § 302a to provide for the establishment of performance standards for home electronic equipment, Congress clarified that the FCC had the power to regulate not only the transmitters of RFI, but the devices in the home that are susceptible to RFI. The House Conference Report which accompanied the Communications Amendments Act of 1982 clarified that "exclusive jurisdiction over RFI incidents (including preemption of state and local regulation of such phenomena) lies with the FCC." H.R. Conf. Rep. No.

97–765, at 16 (1982), *reprinted · in* 1982 U.S.C.C.A.N. 2261. It stated further that

> [s]uch matters [involving RFI] shall not be regulated by local or state law, nor shall radio transmitting apparatus be subject to local or state regulation as part of any effort to resolve an RFI complaint. The Conferees believe that radio transmitter operators should not be subject to fines, forfeitures or other liability imposed by any local or state authority as a result of interference appearing in home electronic equipment or systems. Rather, the Conferees intend that regulation of RFI phenomena shall be imposed only by the Commission.

*Id.* at 40, 1982 U.S.C.C.A.N. at 2277.

Section 302a does not, expressly or by implication, authorize state or local regulation of the source of radio frequency interference. And although Congress limited the FCC to establishing performance standards for home electronic devices instead of for all electronic devices which might be susceptible to RFI,[4] it emphasized that all RFI complaints were to be handled through the Commission.

■ The Neighbors also claim that Section 704 of the Telecommunications Act of 1996, codified at 47 U.S.C. § 332(c)(7) (Supp.1997), preserved the ZBA's authority to make and enforce conditions regulating RFI with respect to BANM's provision of cellular telephone service. Section 332 of Title 47 deals with the provision of commercial mobile services. In 1996 the section was amended specifically to prevent FCC preemption of local and state land use decisions regarding the placement, construction, and modification of personal wireless service facilities. Telecommunications Act of 1996 ("TCA"), Section 704, 47 U.S.C. § 332(c)(7).

The Zoning Administrator's Notice of Violation and the ZBA's subsequent findings' are not local land use decisions regarding the placement, construction, and modification of wireless facilities. The original approval of the application to install BANM's whip antennas was not appealed. No application or request to modify BANM's permit has been made. The Zoning Administrator found BANM in violation of its permit on the basis of excessive RFI; the ZBA subsequently found that BANM neither contributed to the RFI problem in Charlotte, nor was responsible as a co-permittee for WIZN's RFI. Because the decisions by the local zoning authorities do not concern the placement, construction or modification of a wireless service facility, § 332(c)(7)'s limit on FCC preemption is not implicated.

Even if the ZBA proceedings did involve placement, construction or modification of wireless facilities, § 332(c)(7) does not authorize state or local regulation of radio frequency interference. Under this subsection, state and local regulation of personal wireless service facilities with respect to the environmental effects of radio frequency emissions is preempted. 47 U.S.C. § 332(c)(7)(B)(iv). The statute is silent as to the ability of state or local authorities to regulate with respect to radio frequency interference. Section 601 of the TCA, however, provides that "[t]his Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, State or local law unless expressly so provided in such Act or amendments." 47 U.S.C. § 152 (note) (Supp.1997).

In the absence of an express provision allowing state and local authorities to regulate with respect to radio frequency interference, the TCA cannot be construed to permit such regulation, given the FCC's pervasive regulation in this area. *See e.g.,* 47 C.F.R. § 21.902 (1997); 47 C.F.R. § 73.318 (1997); 47 C.F.R. § 101.103 (1997). Moreover, according to the legislative history of the TCA, the limitations on the FCC's jurisdiction are intended to relate strictly to local land use regulations, and are not intended to limit or affect the FCC's general authority over radio telecommunications. S.Rep. No. 104–230, at 462 (1996). Section 332 thus does not, expressly or by implication, authorize state or local regulation of radio frequency interfer-

---

4. The House Conference Report noted that devices designed and marketed for use in a commercial environment normally included protec- tion against RFI, and did not require FCC regulation. H.R. Conf. Rep. No. 97–765, at 38 (1982).

ence which may be produced by cellular telecommunications facilities.

An unreported decision from a district court of this Circuit has held on similar facts that a zoning board may not regulate radio interference, either by imposing restrictions or conditions related to RFI in a zoning permit, or by revoking the permit because of excessive RFI. The district court concluded that Congress intended to maintain exclusive jurisdiction over RFI phenomena, and to assign regulatory responsibility to the FCC. *Great Lakes Wireless Talking Machine Co. v. Hayes*, No. CIV–91–6140T, slip op. at 9 (W.D.N.Y. Jun. 25, 1991).

Case law from other jurisdictions supports the conclusion that the FCC has exclusive jurisdiction over complaints involving radio frequency interference. In *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994 (6th Cir.), *cert. denied*, 511 U.S. 1128, 114 S.Ct. 2137, 128 L.Ed.2d 866 (1994), the Sixth Circuit affirmed the dismissal of a nuisance suit brought by area residents claiming that defendants' radio signals interfered with the operation of their home electronic equipment. The Court held that radio signal interference fell within the FCC's exclusive jurisdiction over technical matters associated with the transmission of radio signals. *Id.*, at 997.

In *Still v. Michaels*, 791 F.Supp. 248 (D.Ariz.1992), neighbors of a ham radio operator brought a nuisance suit claiming radio and television reception interference as a result of the radio transmissions. In dismissing the case for lack of subject matter jurisdiction, the district court ruled that nuisance actions involving RFI are preempted by the FCA, and that RFI matters are exclusively regulated by the FCC. *Id.*, at 252–53.

In *Blackburn v. Doubleday Broadcasting Co.*, 353 N.W.2d 550 (Minn.1984), the Supreme Court of Minnesota affirmed the dismissal of a nuisance suit against radio stations on the ground that their claims were preempted by the FCA's delegation to the FCC of exclusive jurisdiction over the regulation of RFI. *Id.*, at 556. *See also Helm v. Louisville Two–Way Radio Corp.*, 667 S.W.2d 691 (Ky.1984) (affording relief from RFI would involve prohibiting or controlling radio transmissions, a matter within the ex-clusive jurisdiction of the FCC); *Fetterman v. Green*, 455 Pa.Super. 639, 689 A.2d 289, *appeal denied*, 695 A.2d 786 (Jun. 17, 1997) (FCA preempts common law claims involving RFI); *Still v. Michaels*, 166 Ariz. 403, 803 P.2d 124 (App.1990) *review denied* (1991) (FCC regulation of RFI is exclusive, precluding nuisance action); *Smith v. Calvary Educ. Broadcasting Network*, 783 S.W.2d 533 (Mo. App.1990) (court lacks subject matter jurisdiction over suit to enjoin radio station operator from causing RFI to electrical and electronic appliances in plaintiffs' homes and businesses).

In cases involving challenges to local zoning ordinances or permit conditions which would regulate RFI, the FCC has ruled that it has exclusive jurisdiction over RFI. *See, In re Mobilecomm of New York, Inc.*, 2 F.C.C.R. 5519 (1987) (local zoning ordinance regulating RFI in radio paging facility conflicts with federal regulatory scheme); *In re 960 Radio, Inc.*, FCC 85–578 (Nov. 4, 1985), 1985 WL 193883 (local zoning board preempted from imposing requirement on FM radio station that it not cause RFI to existing facilities).

Examination of the Federal Communications Act, the legislative history and case law compels the conclusion that the FCC has exclusive jurisdiction over complaints involving radio frequency interference, whether they are cast as nuisance actions or zoning violations, and whether the complaints involve interference with computers in the home or computers at work. The Neighbors must bring their claims of radio frequency interference to the FCC.

The Neighbors have argued that their claim has to do with the proper siting of a broadcasting facility pursuant to the town's zoning laws. The issue of whether the tower was sited in compliance with the town's zoning regulations (apart from the ZBA's condition requiring remediation of RFI) was not raised in the Notice of Violation, the Notice of Decision or the Neighbors' Statement of Questions presented on their appeal of the ZBA's decision, and is thus not before this Court.

The Neighbors have further argued that they have made claims of fraud and deceit which are not preempted. The sole issue raised by the Zoning Administrator, and appealed to the ZBA, was whether the permittees were in violation of the terms and conditions of their permits, specifically a requirement that they remedy any RFI. Assuming that the permittees did obtain their permits by means of fraud and deception, if the remedy sought is elimination of RFI, state and local jurisdiction is preempted. Assuming that the Neighbors have standing to seek some other relief, such as revocation of the zoning permits, under theories of fraud and deceit, these claims were not part of the proceeding from which they appealed, and are not properly before this Court. Such claims, were they made, would not arise under the Federal Communications Act for purposes of removal jurisdiction under 28 U.S.C. § 1441(b). Claims of fraud or deceit in connection with the zoning permit process may be brought before the appropriate state or local jurisdiction.

III. *Conclusion*

BANM's Motion to Dismiss (paper 14) is GRANTED on the ground of lack of subject matter jurisdiction. WIZN's Motion to Dismiss (paper 13) is DENIED as moot.