**SOUTHWESTERN BELL WIRELESS, INC.** f/k/a Southwestern Bell Mobile Systems, Inc., as general partner of Kansas City SMSA Limited Partnership, and Kansas City SMSA Limited Partnership, Plaintiffs,

v.

**BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS,** Defendant.

Cellular Telecommunications Industry Association, Amicus Curiae.

Civil Action No. 97–2481–GTV.

United States District Court, D. Kansas.

Aug. 28, 1998.

Diane P. Duvall, Curtis M. Holland, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, John A. Prendergast, Blooston, Mordkofsky, Jackson & Dickens, Washington, DC, for Southwestern Bell Wireless, Inc. and Kansas City SMSA Ltd. partnership.

Donald D. Jarrett, Richard J. Lind, William G. Howard, Johnson County Legal Department, Olathe, KS, for Johnson County Bd. of County Com'rs.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiffs bring this action seeking to invalidate certain zoning regulations of Johnson County, Kansas involving communication towers and antennae. Plaintiffs insist that the regulations are preempted by federal law and thus void *ab initio*. The case is before the court on plaintiffs' motion for summary judgment (Doc. 20). For the reasons set forth below, the motion is granted.

### I. Background

The following facts are either uncontroverted or viewed in a light most favorable to the defendant. Immaterial facts are omitted.

Plaintiff Southwestern Bell Wireless, Inc. has a license from the Federal Communications Commission ("FCC") to construct and operate a wireless telecommunications network within the Kansas City metropolitan area. In March 1997, acting on behalf of two individuals residing in unincorporated Johnson County, Kansas, a Southwestern Bell attorney filed an application with the planning staff of the Johnson County Board of County Commissioners requesting a conditional-use permit for Southwestern Bell to erect a 150–foot monopole communications tower on the couple's property. The planning staff scheduled a public hearing before the Olathe Township Zoning Board to consider the application.

Prior to the hearing, the planning staff prepared a report in which it recommended approval of the application subject to certain stipulations. At issue here is the stipulation entitled "Interference with Public Safety Communications." This provision mirrors a zoning amendment adopted by the Johnson County Board of County Commissioners in June 1997. Under the regulation, communication towers, antennae, and all associated site equipment cannot be located or operated in a manner that interferes with, disrupts, or degrades public safety communications.[1] (*See* Def.'s Resp., Ex. B at 16–18) (quoting Johnson County Zoning and Subdivision Regs., art. 23, § 6(B)(4)(f)). The regulation also vests the county's zoning administrator with authority to determine when interference, disruption, or degradation exists. (*Id.* at 17). If, after being informed of the interference, the conditional-use permit holder

---

1. Public safety communications include, but are not limited to, fire, police, and emergency services.

does not remedy the problem within twenty-four hours, the zoning administrator, upon proper notice and an opportunity for a hearing, may force the permit holder to cease operations. (*Id.*).

In July 1997, after securing a copy of the planning staff's report, David Furth, the chief of the FCC's Commercial Wireless Division (a branch of the Wireless Telecommunications Bureau), directed a letter to Roger Kroh, the director of planning and development for the Johnson County Office of Planning, Development, and Codes. In that correspondence, Furth opined that the Johnson County zoning regulations dealing with interference of public safety communications are preempted by the Communications Act of 1934. (Pls.' Compl., Ex. D). He cited relevant legislative history and noted that the FCC has specific procedures in place to handle public safety interference complaints. (*Id.*).

■ Apparently declining to follow the FCC's legal interpretation, the Johnson County Board of County Commissioners voted in August 1997 to approve the conditional-use permit application filed by Southwestern Bell subject to the stipulation regarding interference with public safety communications. Construing the stipulation as an adverse action of local government, plaintiffs responded by filing this lawsuit requesting the court to declare the public safety interference provision of the regulation void and to enjoin its enforcement.[2]

## II.  Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be re-

solved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## III.  Discussion

■ The Supremacy Clause of the Constitution, U.S. Const., art. VI, cl. 2., authorizes the federal government to preempt state laws to the extent necessary to achieve its purposes. *City of New York v. FCC*, 486 U.S. 57, 63, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988). Preemption may be effectuated through both federal statutes and federal regulations properly adopted in accordance with statutory authorization. *Id.* The "ultimate touchstone" of preemption analysis is congressional intent. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

■ The Supreme Court has identified three scenarios in which federal law preempts state law:

(1) "when Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law;"

(2) "when it is clear, despite the absence of explicit pre-emptive language, that Congress has intended, by legislating comprehensively, to occupy an entire

---

**2.** Because the stipulation in plaintiffs' conditional-use permit adversely affected their ability to operate their wireless telecommunications net-

work, the court has jurisdiction over this dispute pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

field of regulation and has thereby left no room for the States to supplement federal law;" and

(3) "when compliance with both state and federal law is impossible or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698–99, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984) (citations omitted); *accord Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608.

Plaintiffs contend that the Communications Act of 1934, as amended, 47 U.S.C. § 151 *et seq.,* preempts the Johnson County zoning amendment restricting the operation of communication towers and antennae. The court agrees. Contrary to the arguments of plaintiffs and amicus, however, preemption is not express; it is only implied.

*A. Express Preemption*

█ In support of their express preemption theory, plaintiffs point to several sweeping jurisdictional statements in the Communications Act. They note, for example, that Congress created the statute "[f]or the purpose of regulating interstate ... commerce in communication by wire and radio." 47 U.S.C. § 151 (Supp.1998). Citing a licensing provision of the statute, they also observe that the Act was designed "to maintain the control of the United States over all channels of radio transmission." *Id.* § 301. They further highlight an enabling clause vesting the FCC with the power to "[m]ake such regulations not inconsistent with law as it may deem necessary to prevent interference between stations and to carry out the provisions of the [Act]." *Id.* § 303(f).

The problem with plaintiffs' arguments is that preemption "cannot be judged by reference to broad statements about the 'comprehensive' nature of federal regulation under the Federal Communications Act." *Head v. New Mexico Bd. of Examiners in Optometry,* 374 U.S. 424, 429–30, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963). The preemption inquiry must focus on the particular facts of the case. *Id.* at 430, 83 S.Ct. 1759. It is undisputed that Congress delegated authority to the FCC to regulate matters involving radio frequency interference ("RFI"). The question

here is whether Congress intended the FCC's jurisdiction to be exclusive. The Communications Act contains no *express* provision on that issue. *Broyde v. Gotham Tower, Inc.,* 13 F.3d 994, 997 (6th Cir.1994); *In re Appeal of Graeme,* 975 F.Supp. 570, 573 (D.Vt.1997); *Blackburn v. Doubleday Broadcasting Co.,* 353 N.W.2d 550, 554 (Minn.1984). Accordingly, the court must examine whether federal law impliedly preempts state law.

*B. Implied Preemption*

█ "[F]ederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *R.J. Reynolds Tobacco Co. v. Durham County,* 479 U.S. 130, 140, 107 S.Ct. 499, 93 L.Ed.2d 449 (1986) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)). Noting the historic presumption against preemption, defendant seeks to apply the doctrine as narrowly as possible here. In doing so, defendant suggests that the court must confine its analysis to explicit congressional edicts. The Supreme Court, however, has rejected such a narrow approach:

[I]n a situation where state law is claimed to be pre-empted by federal regulation, a narrow focus on Congress' intent to supersede state law is misdirected for a preemptive regulation's force does not depend on express congressional authorization to displace state law. Instead, the correct focus is on the federal agency that seeks to displace state law and on the proper bounds of its lawful authority to undertake such action. The statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof. Beyond that, however, in proper circumstances the agency may determine that its authority is exclusive and pre-empts any state efforts to regulate in the forbidden area.... [I]f the agency's choice to pre-empt represents a reasonable accommodation of conflicting policies that were committed to the agency's care by

the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned. *City of New York,* 486 U.S. at 64, 108 S.Ct. 1637 (citations and internal alterations omitted).

In *Cipollone,* the Court reaffirmed its position that "[i]n the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." 505 U.S. at 516, 112 S.Ct. 2608 (citations omitted). The controverted Johnson County zoning ordinance satisfies both criteria for preemption.

### 1. Field Occupied by Federal Law

In adopting the Communications Act, Congress conferred upon the FCC "comprehensive powers to promote and realize the vast potentialities of radio." *National Broadcasting, Co. v. United States,* 319 U.S. 190, 217, 63 S.Ct. 997, 87 L.Ed. 1344 (1943). Determining that national uniformity is necessary in such a role, the Supreme Court has interpreted the statute to vest the FCC with exclusive jurisdiction over "technical" issues such as radio frequency. *See Head,* 374 U.S. at 430 & n. 6, 83 S.Ct. 1759. Legislative history bolsters the Court's analysis. In 1982, for example, Congress amended the Communications Act to authorize the FCC to establish minimum performance standards for home electronic systems and equipment susceptible to RFI. *See* Pub.L. No. 97–259, 96 Stat. 1091 (codified as amended at 47 U.S.C. § 302a(a)(2)). The House Conference Report to the bill explicitly stated that the amendments were:

> intended to clarify the reservation of exclusive jurisdiction to the Federal Communications Commission over matters involving RFI. Such matters shall not be regulated by local or state law, nor shall radio transmitting apparatus be subject to local or state regulation as part of any effort to resolve an RFI complaint.

H.R. Conf. Rep. No. 97–765, at 40 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2237, 2277. In the aftermath of the 1982 amendments, several courts have dismissed lawsuits based on nuisance theories claiming that radio signals interfered with home electronic equipment. *See Broyde,* 13 F.3d at 997–98; *Freeman,* 975 F.Supp. at 574–75; *Still v. Michaels,* 791 F.Supp. 248, 252–53 (D.Ariz. 1992); *Blackburn,* 353 N.W.2d at 552–55.

Defendant insists that the 1982 amendments' sole focus on home electronic equipment suggests that the Communications Act has no preclusive effect on local regulation of RFI with public safety communications. Such a narrow interpretation is not dictated by the amendments. As the *Freeman* court recently noted:

> With the enactment of the Communications Amendments Act of 1982, which amended § 302a to provide for the establishment of performance standards for home electronic equipment, Congress clarified that the FCC had the power to regulate not only the transmitters of RFI, but the devices in the home that are susceptible to RFI....
>
> Section 302a does not, expressly or by implication, authorize state or local regulation of the source of radio frequency interference. And although Congress limited the FCC to establishing performance standards for home electronic devices instead of for all electronic devices which might be susceptible to RFI, it emphasized that all RFI complaints were to be handled through the Commission.

975 F.Supp. at 573–74 (internal footnotes omitted); *accord In the Matter of 960 Radio, Inc.,* FCC 85–578, at ¶ 7 (Nov. 4, 1985) (available at 1985 WL 193883) ("[F]ederal power in the area of [RFI] is exclusive; to the extent that any state or local government attempts to regulate in this area, their regulations are preempted.").[3]

Defendant further argues that the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56, altered the legal landscape. Defendant specifically points to section 704 of

---

**3.** The court must accord deference to the FCC's interpretation pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

the 1996 Act. That provision, which was designed to preserve local zoning authority, underscores that the amended Communications Act does not "limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the *placement, construction, and modification* of personal wire-less service facilities." [4] 47 U.S.C. § 332(c)(7)(A) (emphasis added). To the extent that this statute represented a change in the law, it in no way insulates the zoning ordinance at issue here. As the House Conference Report explained:

> The limitations on the role and powers of the [FCC] under [section 704] relate to local land use regulations and are not intended to limit or affect the [FCC's] general authority over radio telecommunications, including the authority to regulate the construction, modification and operation of radio facilities.

H.R. Conf. Rep. No. 104–458, at 209 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 223.

The controverted Johnson County ordinance focuses not on placement, construction, and modification issues but on operational matters. It erects performance standards and authorizes municipal officials to shut down telecommunications towers for lack of compliance. Defendant's protestations notwithstanding, the ordinance expressly prohibits RFI with public safety communications, thereby exceeding the limited regulatory authority preserved to states and municipalities in the Telecommunications Act of 1996.

Finally, defendant avers that the Communication Act's "savings clause," codified at 47 U.S.C. § 253(b), specifically permits local regulation of public safety and welfare issues. That section states:

> Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

47 U.S.C. § 253(b). Section 253, by its very title, is designed to deal only with barriers to market entry. It is not a mechanism by which states and municipalities can regulate RFI. Moreover, the court will not interpret isolated preemption clauses out of context. The court must evaluate such provisions in light of a statute's overall language and legislative history as well as the need for national uniformity. *See Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 220–21, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). Nothing in § 253(b) casts any doubt on federal RFI preemption. At most, the section merely preserves certain existing rights of local governing authorities which are not inconsistent with federal law.

### 2. Conflict with Federal Law

■ The court also believes that the Johnson County zoning ordinance conflicts with federal law. A conflict between state and federal law arises "when 'compliance with both federal and state regulations is a physical impossibility' or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Fuller v. Norton,* 86 F.3d 1016, 1025–26 (10th Cir.1996) (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)).

The FCC has delegated authority to its Compliance and Information Bureau as well as its Wireless Bureau to develop and coordinate programs and rules to ensure the interference-free operation of wireless telecommunications equipment and networks. *See* 47 C.F.R. §§ 0.111(e) & 0.131(h) (1997). Pursuant to this authority, the bureaus have implemented procedures to resolve RFI disputes involving cellular and other wireless licensees, *see id.* § 22.353, personal communications services operations, *see id.* § 24.237, and private radio stations, *see id.* §§ 90.173(b) & 90.403(e). For those telecommunications providers who transgress the Commission's regulations, the FCC has a panoply of remedial options ranging from fines (classified as "forfeitures" in the FCC's

---

**4.** This preservation of local zoning authority is subject to certain exceptions, none of which are applicable here.

nomenclature) to *forced cessation of opera-tions.* Johnson County must avail itself of those remedies if it believes that permit holders within its jurisdiction are interfering with public safety communications. *See Broyde,* 13 F.3d at 998 (grievances regarding RFI must be lodged with FCC via written complaint or petition to deny license/renewal application).

If states and municipalities were permitted to adopt RFI restrictions, the FCC's ability to carry out its statutory mandate of administering a "unified and comprehensive regulatory system" for the telecommunications industry would be seriously impeded. *See FCC v. Pottsville Broadcasting, Co.,* 309 U.S. 134, 137, 60 S.Ct. 437, 84 L.Ed. 656 (1940). Licensees would be subjected to conflicting legal obligations and the FCC's compliance divisions would be relegated to an advisory role. With respect to Johnson County's ordinance, the zoning administrator could shut down the operations of a permit holder whose tower interferes with public safety communications even if the permit holder is in full compliance with FCC rules and regulations. The court does not dispute that defendant has a legitimate interest in enacting regulations necessary to perform its governmental functions. Defendant cannot invoke that principle, however, in contravention of federal law. *See de la Cuesta,* 458 U.S. at 152, 102 S.Ct. 3014 ("The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail."). The fact that Johnson County may be able to resolve RFI disputes more expeditiously than the FCC is simply not germane to the court's inquiry.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiffs' motion for summary judgment (Doc. 20) is granted.

**IT IS SO ORDERED.**