737 A.2d 715 (1999)
325 N.J. Super. 61
SPRINT SPECTRUM, L.P., Plaintiff,
v.
TOWNSHIP OF WARREN PLANNING BOARD et al., Defendant.
Superior Court of New Jersey, Law Division, Somerset County.
Decided July 9, 1999.
*716 Anthony F. Malaga, Jr., Gaccione, Pomaco & Beck, Attorney for Plaintiff.
John C. Phillips, Westfield, Buttermore, Mullen, Jeremiah and Phillips, Esqs., Attorney for Defendant Warren Township Planning Board.
Stanley T. Perlowski, Millburn, Attorney for Defendants Warren Township Board of Health and Dr. Ronald Cohen.
HOENS, J.S.C.
Before the Court is the Order to Show Cause filed by plaintiff Sprint Spectrum L.P., seeking judgment in its favor on all counts contained in its verified complaint in lieu of prerogative writ. Defendants Township of Warren Planning Board ("Planning Board"), Township of Warren Board of Health ("Board of Health") and *717 Dr. Ronald Cohen filed briefs and certifications in opposition to the application of plaintiff for relief and request that the Court deny any and all relief and dismiss the complaint. The dispute between these parties raises a novel question not previously decided in New Jersey of the scope of federal preemption of local review relating to cell towers, as a result of which we address the issues raised by these parties at length.
The facts are not in dispute. In 1995, plaintiff was the highest bidder at an auction held by the Federal Communications Commission ("FCC") for a PCS wireless broadcast license in the New York Major Trading Area ("MTA"). This license includes Somerset County, the county in which the subject site is located, and provides that, within five years of the issuance of the license, plaintiff must be able to provide its PCS service to 33% of the population in the New York MTA. In order to meet its obligations under the FCC license, plaintiff must, within the time established under the license, have in place a system of "cell sites" to serve portable wireless communications handsets and mobile telephones. These "cell sites" consist of an antenna mounted on a pole, building or other structure, connected to a small equipment cabinet located near the antenna.
On or about September 25, 1998, plaintiff filed an application with the Planning Board for installation of the antenna which gives rise to this dispute. That application included a checklist of items that needed to be submitted in order to complete the application process. Thereafter, by letter dated November 9, 1998, defendant Ronald Cohen (the Health Officer) advised plaintiff that among the items included on the checklist, was the requirement that the application, as every other application, to be reviewed by the Board of Health before it would be permitted to proceed before the Planning Board. That letter further outlined the areas of inquiry relevant to the Board of Health. Counsel for the applicant responded immediately, contending that under the provisions of the Telecommunications Act of 1996, 47 U.S.C. § 332, its application was excluded from any Board of Health review, but offered to appear and answer questions nonetheless. Counsel for the Board of Health responded, disputing the applicant's interpretation of federal law but accepting, in essence, the applicant's offer to appear. Thereafter, Cohen advised plaintiff of a scheduled Board of Health meeting on December 2, 1998, and suggested that plaintiff's engineer be present on that date to answer questions regarding radio frequency ("RF") emissions at the site. In response, on November 24, 1998, counsel for plaintiff wrote to counsel for the Board of Health continuing to assert that the Board of Health is prohibited by Federal law from review of engineering data concerning plaintiff's compliance with RF emissions and that its facility was excluded from review by the Board of Health.
Notwithstanding plaintiff's assertion regarding limitations on the authority of the Board of Health to act, on December 1, 1998, plaintiff filed with the Board of Health a report from Bell Labs dated November 30, 1998 containing its expert's RF emissions analysis regarding the proposed wireless communications facility. The report asserted that the RF emissions at the proposed facility complied with the applicable regulations promulgated by the FCC. The report stated that it was prepared by the Wireless & Optical Technologies Safety Department at Bell Laboratories for Mike Hughes at Sprint Spectrum. The name of the author was not disclosed, and the document was neither signed nor verified as FCC regulations required.
On December 2, 1998, plaintiff's counsel appeared at the meeting of the Board of Health accompanied by an expert from Bell Laboratories. However, Mr. Cohen on behalf of the Board of Health advised that since plaintiff's RF emissions analysis report was not submitted until the day before, December 1, 1998, the Board of *718 Health had not had an opportunity to adequately review the report and, therefore, was unable to conduct a hearing on December 2, 1998 as planned. As a result, the Board of Health did not conduct any inquiry of the applicant or its expert and took no action on the application at that meeting. On February 2, 1999, plaintiff filed revised plans with the Planning Board. Counsel for plaintiff at that time requested that the Planning Board determine that the application was complete and requested that it be placed on the agenda of the Planning Board, notwithstanding the applicant's failure to secure Board of Health approval, contending that federal law prohibited review of RF emissions.
On March 9, 1999, plaintiff's counsel, once again, filed with the Board of Health the original Bell Laboratories Report, together with an additional report from Bell Laboratories prepared by RF Engineer Paul Testagrossa. In addition, plaintiff's counsel requested a hearing before the Board of Health. Thereafter, plaintiff's application was placed on the Board of Health's agenda for its April 7, 1999 meeting. Plaintiff received a scheduling memorandum, dated March 12, 1999 which advised plaintiff to "plan to attend or make arrangements to have your representative present to answer any questions concerning your application." In a letter to the Planning Board dated March 20, 1999, plaintiff's counsel again advised that plaintiff believed its application was exempt from Board of Health review and advised that plaintiff would not be appearing at the April meeting or presenting any additional testimony to the Board of Health.
By letter dated April 6, 1999, defendant Sigrid Mueller (Administrator of the Warren Township Planning Board) advised counsel for plaintiff that the Planning Board had denied plaintiff's request for a waiver of Board of Health review and advised that the application would be considered to be incomplete until such time as plaintiff satisfied the Board of Health with regard to RF emissions and other health issues. Notwithstanding that, plaintiff did not attend the April 7, 1999 meeting of the Board of Health, and, in light of that absence, that body again took no action on the application.
On the return date of this Order to Show Cause, plaintiff sought an order from this Court: (1) declaring the actions of the defendants to be in violation of the Telecommunications Act of 1996, 47 U.S.C. § 332; (2) ordering that the Planning Board and the Board of Health are precluded from further consideration of the effects of RF emissions; (3) ordering the Planning Board to certify plaintiff's application complete as of February 2, 1999, the date of its request to the Planning Board for action on the application; (4) ordering the Planning Board to conduct a hearing on plaintiff's application within twenty days; (5) declaring defendants to be in violation of plaintiff's civil rights pursuant to 42 U.S.C.A. § 1983 and awarding attorney's fees pursuant to 42 U.S.C.A. § 1988, and (6) ordering that the Court will retain jurisdiction of the matter until the Planning Board enters a decision with regard to plaintiff's application.
Plaintiff contends that Section 704 of the Telecommunications Act of 1996 arose out of the expressed intention of Congress to create greatly expanded competition in telecommunications and that as a result, it severely limited the ability of any state or local authority to apply zoning regulations to wireless telecommunications facilities. Sprint argues that, under the Act, zoning regulations are permissible only to the extent that they do not interfere with the purposes of the Act. It notes that section 704 of the Act provides in pertinent part:
(7) Preservation of local zoning authority
...
(B)(i) The regulation of the placement, construction and modification of personal wireless service facilities by any State or local government or instrumentality thereof *719 (I) Shall not unreasonably discriminate among providers of functionally equivalent services;
(II) Shall not prohibit or have the effect of prohibiting the provision of personal wireless services;
(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.
(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
47 U.S.C.A. § 332(c)(7)(B).
In particular as it relates to the issue before this Court, the Act further provides:
(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless services facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.
47 U.S.C.A. § 332(c)(7)(B)(iv).
Plaintiff argues that the Act broadly preempts any local or state governmental entity from interfering with the effectuation of the Act's purpose and that it specifically prohibits the Board of Health and the Planning Board from inquiring into the effects of RF emissions as a precondition to approval of the application. Moreover, plaintiff contends that the New Jersey Supreme Court has held that 47 U.S.C.A. § 332(c)(7)(B)(iv) preempts completely local consideration of RF emissions, citing Smart SMR of New York, Inc. v. Fair Lawn Board of Adjustment, 152 N.J. 309, 334, 704 A.2d 1271 (1998), and urges this Court to act so as to effectuate the broad preemptive purpose of the Act.
Here, plaintiff contends that any request by the Board of Health or the Planning Board that plaintiff submit to a hearing before the Board of Health as a precondition to approval of its application is a violation of the Act. Plaintiff argues that it submitted to the Board of Health a report dated November 30, 1998 from Bell Labs addressing RF emissions at the proposed facility. According to plaintiff, the report indicated that RF emissions expected at the site complied with all applicable FCC regulations concerning such emissions. Plaintiffs contend that once proof is submitted that RF emissions meet applicable standards, local authorities are preempted from any further inquiry regarding the issue of RF emissions, citing In re Freeman, 975 F.Supp. 570, 574 (D.Vt.1997). Plaintiff argues that, despite the fact that it submitted an engineering report establishing that the anticipated RF emissions comply with the FCC regulations, the Board of Health and the Planning Board refused to certify plaintiff's application as complete, which action Sprint contends violates federal law.
Alternatively, plaintiff contends that the Planning Board's requirement that Sprint secure Board of Health approval for its application as a prerequisite to a consideration of the application is an impermissible delegation of its decision making powers in violation of the Municipal Land Use Law, N.J.S.A. 40:55D-25. As a result, Sprint urges the Court to relieve it of the burden of any compliance with the Planning Board's deferral to the Board of Health, and requests that the Court deem, as a consequence, the application complete, and direct the Planning Board to proceed.
The defendants submitted separate oppositions, each urging the Court to deny all requested relief but relying on somewhat different grounds. The defendants Board of Health and Dr. Cohen contend *720 that the Act is not broadly nor generally preemptive and cannot be used to interfere with the legitimate and ordinary inquiries of the Board of Health. In this regard the Board of Health contends that Section 322(c)(7) of the Communications Act actually preserved local government authority over zoning and land use matters provided that such actions cannot be based upon the environmental effects of RF emissions which have been shown to comply with the RF guidelines established by the FCC. As a result, the Board of Health argues that plaintiff's obligation to comply with the requirements of the Township Ordinance concerning securing a Board of Health certification, as a condition to completed application status, is not preempted by the FCC. Furthermore, the Board of Health contends that plaintiff's obligation to comply with its reasonable public health requirements with regard to issues other than RF emissions (such as site security, the use of back-up generators, battery storage and leakage) are plainly not preempted by the Act. Finally, the Board of Health argues that the federal telecommunications laws and regulations were not devised to exempt applicants such as plaintiff from the requirements for filing applications and supporting documents reasonably in advance of meetings, in order that the members have the time to read them before acting on them nor from attendance at meetings of the Board of Health to present their applications and answer questions, except where RF compliance has been properly demonstrated. For these reasons the Board of Health asks the Court to dismiss this action.
The defendant Planning Board contends that plaintiff has failed to correctly frame the issue and urges the Court to focus on the actual dispute. The issue, in the Planning Board's view, is whether the request by the Board of Health that plaintiff submit satisfactory proof that its proposed facility does, in fact, comply with the standards set by the relevant federal regulations and provide information regarding potential health concerns at the site other than any RF emission concerns (e.g., use of batteries and other power sources,) is prohibited by the Act. It contends that it and the Board of Health simply want the applicant to demonstrate that the facility complies with the FCC standards, and argues that Sprint's refusal to explain its expert's report and methodology or to answer other health questions is impermissible.
The Planning Board argues that by its focus on the narrow question of RF emissions, plaintiff ignores the fact that the Board of Health (or the Planning Board if it so chose) has the right to verify that the emissions do comply with relevant Federal standards, ignores the fact that the Board of Health has the right to review other health related issues such as batteries and other on site power sources and ignores the fact that the Planning Board simply requested that the applicant satisfy the same check list requirements imposed on every other applicant to the Planning Board.
Moreover, the Planning Board contends that plaintiff's allegations concerning compliance with the MLUL and its allegations as to civil rights violations are wholly without merit. As to the MLUL, it argues that it has not delegated its decision making authority to the Board of Health and has adopted by ordinance its procedures concerning applications as authorized by the statute. As to the civil rights claims, it contends that its failure to act on an incomplete application simply does not state a claim for a civil rights violation. Consequently, the Planning Board asks that the Order to Show Cause be discharged and plaintiff's complaint be dismissed. According to the Board, until plaintiff complies with the ordinances of the Township of Warren and the procedures governing every application for development of any site plan, there is no basis for legal relief.
We turn first to the plaintiff's contention that the requirement imposed on applicants by the Planning Board that they *721 secure a Board of Health approval in advance of any consideration by the Planning Board is an impermissible delegation of duties under the MLUL. First, it is noteworthy that the applicant made no objection to this requirement in the first instance, and only raised its argument that the requirement is an improper delegation of duties after the Board of Health refused to proceed with a hearing on December 2, in effect refusing to waive its requirement that it be given materials to consider fourteen days in advance of the meeting at which the issue is to be considered and which it contends would have forced it to accept without question the conclusions of the unsigned and unverified report of the applicant's consultant at the December 2 meeting. In fact, it is of note that the applicant was aware that the Planning Board had rejected its request for a waiver of the Board of Health review prior to the April 7 meeting scheduled by the Board of Health and at which the issue might well have been resolved had the applicant chosen to attend as it had a right to do.
Apart from the interesting issue of whether such actions by Sprint constitute a waiver of the right to object to the Planning Board's usual procedure of requiring a Board of Health review, there is nothing in the MLUL which prohibits the procedure utilized by the Planning Board here. As the Planning Board points out, the use of a checklist procedure for determining whether and when an application is complete is specifically permitted by the MLUL, see N.J.S.A 40:55D-10.3 and has specifically been endorsed by our courts, see Purwin v. Bernards Twp. Planning Board, 221 N.J.Super. 243, 534 A.2d 96 (Law Div.1987). Nor is there anything in the use of a checklist or the inclusion on the list of the requirement for a Board of Health hearing or certificate which violates the MLUL or constitutes an impermissible delegation of duties. Plaintiff had the option under the MLUL of seeking a waiver, a remedy of which it did not initially avail itself, and which was promptly reviewed when the applicant sought the waiver after the failed effort to have the Board of Health act in early December. Nothing in the requirement itself bespeaks a decision by the Planning Board to defer its decision making authority to the Board of Health, which would be improper under the MLUL, as the Board of Health input is and remains advisory only. As there is no ground on which to find that the requirement, which the Planning Board asserts and Sprint does not seriously contest is included in the Township Ordinance as required by the MLUL, of compliance with the matters on the checklist constitutes an impermissible delegation under that statute, the application by the plaintiff before the Court on this ground must be denied.
We turn then to the contentions of the plaintiff that the requirement for Board of Health review violates the provisions of the Telecommunications Act of 1996. That Act provides, in pertinent part,
no State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless services facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.
47 U.S.C.A. § 332(c)(7)(B)(iv). The real focus of the dispute and of the plaintiff's contention here, is the scope of the preemptive language in the Act. Plaintiff contends that the preemptive scope is broad and all-inclusive, prohibiting any inquiry of any type relating to RF emissions. Plaintiff cites the Act but also contends that our Supreme Court adopted this view in its only published decision to touch upon the issue, citing Smart SMR v. Fair Lawn Bd. of Adjustment, 152 N.J. 309, 334, 704 A.2d 1271 (1998). Defendants disagree, arguing that the Act does not deprive them of the right to inquire into health related issues other than the effects of RF emissions and that the Act does not prevent *722 them from assuring themselves that the facility does comply with RF emissions regulations.
This Court agrees with the defendants. First, while the Act expresses a strong preemptive policy, see 47 U.S.C.A. § 332(c)(3), the Act also expresses an intention to preserve, in general, the authority of state or local government to assert and to perform its usual zoning functions. Specifically, the Act provides
(7) Preservation of local zoning authority
(A) General Authority
Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a state or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
47 U.S.C.A. § 332(c)(7)(A). As a result, the preemptive language which is included in subsequent paragraphs is to be narrowly and not broadly construed, for the expressed intention of Congress is to effect a limited preemption and not an expansive one.
Second, the actual preemptive language of the Act rests upon a demonstration by the applicant of compliance with the RF emissions as established in the applicable federal regulations. That language, by its own terms, requires compliance with federally-established RF emissions levels as a prerequisite to preemption. In Sprint's view, compliance is shown merely by serving a report which it contends establishes its compliance with the applicable RF emissions requirements. And in Sprint's view, it is beyond the scope of the local authority's powers to review that report, to raise questions about its methodology or its calculations, or to make any inquiry of any kind, in spite of the fact that in this particular case, its report was unsigned and unverified as required by applicable federal regulations, see 47 C.F.R. §§ 1.17, 1.52, and in spite of its initial concession, by its appearance before the Board of Health, that the Board retained some authority to review the report and to act. Here, plaintiff submitted a report from Bell Labs addressing RF emissions at the proposed facility one day before a previously scheduled hearing. While plaintiff's counsel appeared at the meeting of the Board of Health accompanied by an expert from Bell Laboratories, it has, since that time, been apparent that plaintiff believes that it has no obligation to explain that report or its methodology. Plaintiff contends that the report in and of itself was sufficient to demonstrate that the proposed facility will comply with Federal RF emission standards. More significant, plaintiff suggests that the Act requires the municipality to simply accept its assertion of compliance without question. Defendants contend that the report fails to make clear the method by which plaintiff's expert arrived at his conclusions or performed his calculations, and assert it is necessary to question plaintiff's expert on how he arrived at the conclusions outlined in the report. Nothing in this request or this procedure violates the conceded preemptive reach of the Act. The Board has made no effort to impose its own view of RF levels on the application nor to substitute its judgment for that of the FCC, but has merely sought a demonstration of compliance. Nothing in the statutory language is so broadly preemptive as to excuse the applicant from having to demonstrate compliance with FCC regulations regarding RF emissions. And nothing in this language permits the applicant to submit an unsigned report with technically complex calculations and contend, as plaintiff does here, that the municipality is bound by statute to accept its assertion that the facility is in compliance.
Pursuant to the Act, an applicant must demonstrate compliance with RF emission standards established by the *723 FCC. 47 U.S.C.A. § 332(C)(7)(b)(iv). It is not, by virtue of the Act, exempt from showing that it complies, it is merely exempt from a locally-imposed and more stringent emissions standard. It is this Court's opinion, therefore, that nothing in the Board of Health review procedure here utilized contravenes the authority of the FCC as preserved in the Act.
Nor is there anything in our Supreme Court's most recent decision respecting the preemptive reach of the Act which compels us to reach the conclusion urged upon us by plaintiff. In Smart SMR v. Fair Lawn Bd. of Adjustment, supra, the Supreme Court held that the Board of Adjustment violated the Act by permitting neighbors of the proposed facility to testify that they believed that the RF emissions sanctioned by the FCC were not sufficiently stringent to protect their health. Id. at 333, 704 A.2d 1271. It was this type of input and this expression of local concern which that Board not only permitted but on which it relied in rejecting the application and which the Supreme Court held was specifically preempted. Id. at 334, 704 A.2d 1271. Nothing in that decision, however, implies that the preemptive reach of the Act is so broad or all encompassing as to require a Municipal Board to accept without question that a complex technical report in and of itself demonstrates compliance with federal regulations. Rather, we hold that the preemptive reach of the Act does not prevent a municipality from requiring an explanation to ensure that the federal RF emissions standards have been met and the federal standards satisfied. As a result, while the supplemental submission by the applicant satisfied the federal requirements concerning verification and cured that threshold defect, the explanations of the methodology remain an area of appropriate Board of Health inquiry. Furthermore, the Board of Health here sought information from plaintiff regarding issues other than RF emissions such as site security, the use of back-up generators, battery storage and leakage. These issues and these ordinary health concerns are not preempted under any analysis of the Act and these inquiries have yet to be addressed by plaintiff.
Thus, as it respects the Board of Health, its refusal to issue a certification pending the appearance by plaintiff's representative is entirely appropriate. Moreover, the refusal of the Planning Board to waive that requirement based upon its interpretation of the Federal Act was permissible. Here, the Planning Board simply requested that plaintiff satisfy the same check list requirements facing every other such applicant. Based upon this analysis, plaintiff's request to have the Court deem its application complete and require the Planning Board to act must be denied. To grant it the relief it seeks would be to exempt it completely from review by the appropriate local authorities, a result neither mandated by nor permitted by the Act.
Furthermore, plaintiff's civil rights claim is without any merit. Actions under the Civil Rights Act are only sustainable when a person or governmental entity, acting under color of state law, allegedly violates a Federal law. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). The defendants' actions as to plaintiff were not taken in violation of the Telecommunications Act. Here, defendants are simply enforcing, in a nondiscriminatory and permissible fashion, municipal ordinances relating to matters clearly within their purview. As such, plaintiff cannot recover on its civil rights claim, which claim must as a result be dismissed.
Based on the foregoing, plaintiff's Order to Show Cause seeking to deem its application for site plan approval complete is denied. Defendants' request that plaintiff's complaint be dismissed is granted.