Dorris SMITH, Paul Smith, Randy Soens, and Thomas E. Crutchfield, individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

CALVARY EDUCATIONAL BROAD-CASTING NETWORK, a Missouri Not–For–Profit Corporation, d/b/a KOKS, Defendant–Respondent.

No. 16347.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 7, 1990.

Mary Dilks, Poplar Bluff, for plaintiffs-appellants.

Janet K. Brown, Greenville, for defendant-respondent.

FLANIGAN, Presiding Judge.

Plaintiffs appeal from an order of the trial court dismissing this injunction action without prejudice "for lack of subject matter jurisdiction."

Plaintiffs' brief states:

"Plaintiffs contend that the defendant radio broadcast station is interfering with their right to peaceful enjoyment of their property. The issue herein is whether federal legislation preempts this Missouri common law action solely because defendant operates under a license issued by the Federal Communications Commission. It is plaintiffs' contention that it does not."

Among the matters alleged in the petition are those set forth in the following four paragraphs.

Defendant Calvary Educational Broadcasting Network, a Missouri not-for-profit corporation, operates FM Radio Station KOKS in Butler County. Station KOKS began operation in October 1988 and operates with a power of 100,000 watts.

The operation by defendant of Station KOKS causes interference in the use by plaintiffs of electrical and electronic appliances located in plaintiffs' homes or businesses. The extent of interference is determined by the direction and distance of the respective plaintiff's property from the "broadcast station facility." Plaintiffs reside in a location in which they experience all or most of the interference. Prior to the commencement of broadcasting by KOKS, plaintiffs had minimal or no interference in the use of the appliances.

The interference experienced by plaintiffs includes the following: television reception on some channels has been obliterated and replaced by broadcasts of KOKS; television reception is accompanied by "snow," sound surges, shadows and wavy pictures; VCR receptions have similar problems; KOKS is heard on radio stations located in other parts of the broadcast band; KOKS broadcasting is heard on telephones and radios and causes various problems with computers, stereos, tape players, musical instruments with speakers, satellite systems, and baby monitors.

If defendant continues to cause the interference to appliances, plaintiffs will be unable to use them and will suffer irreparable damage, "in amounts incapable of being ascertained." The interference has made the appliances unfit for use and worthless for their intended purpose. Plaintiffs have no adequate remedy at law.

The prayer of the petition was that defendant and its agents and employees be enjoined from allowing defendant's broadcasting to emit interference that renders plaintiffs' appliances unfit for the use intended.

Although denying certain portions of the petition, defendant's answer admitted that defendant began broadcasting on the date alleged by plaintiffs. The answer further alleged that defendant "is in complete compliance with the Federal Communications Commission's rules and regulations," and that defendant has "a valid FCC license." After filing its answer, defendant filed a motion to dismiss "for lack of jurisdiction over the subject matter." That motion was sustained and this appeal followed.

The petition made no mention of the licensing of defendant's broadcasting activities by the FCC, and the record is silent on whether evidence of that fact was adduced at the hearing on defendant's motion to dismiss. The statement in plaintiffs' brief, quoted in the second paragraph of this opinion, constitutes a concession of that fact. "Where a statement of facts is asserted in one party's brief and conceded to be true in his adversary's brief, the Court of Appeals may consider it as though it appeared in the record." *Tittsworth v. Chaffin*, 741 S.W.2d 314, 315[1] (Mo.App. 1987). To similar effect see *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo. 1956); *Hempe v. Cape*, 702 S.W.2d 152, 153[1] (Mo.App.1985); *Hammack v. White*, 464 S.W.2d 520, 522[4] (Mo.App.1971).

For the reasons which follow, this court affirms the trial court's order of dismissal. In so doing, this court finds persuasive the rationale and holding of the Supreme Court of Minnesota in *Blackburn v. Doubleday Broadcasting*, 353 N.W.2d 550 (Minn.1984).

In *Blackburn* the court held that the Federal Communications Act, 47 U.S.C. §§ 151, et seq., barred a state court action by plaintiffs who claimed that defendants' radio transmission, licensed by the FCC, constituted an actionable nuisance by distorting plaintiffs' reception of other desired radio signals. The court held that plaintiffs' claim, which sought monetary damages and injunctive relief, "involves subject matter within the exclusive regulatory jurisdiction of the FCC; namely, the regulation of interference between radio stations. To allow the instant state law nuisance claim would frustrate the scheme of the Federal Communications Act which grants the FCC exclusive jurisdiction over this subject matter. Accordingly, we hold that enforcement of the instant state law nuisance claim is barred by the Supremacy Clause of the United States Constitution." *Blackburn,* at 557.

*Blackburn* is the only case cited by the parties or found by the independent research of this court which addresses the issue of whether a state court has jurisdiction to enjoin the transmission of radio signals licensed by the FCC or to order a reduction in the operating power of such transmission. Appellants cite no case upholding such state court jurisdiction. In *Blackburn* the supreme court upheld the trial court's dismissal of the claims of persons whose predicament was remarkably similar to that of plaintiffs here.

"Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, the enforcement of a state regulation may be pre-empted by federal law in several circumstances: first, when Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law, ...; second, when it is clear, despite the absence of explicit pre-emptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby 'left no room for the States to supplement' federal law, ...; and, finally, when compliance with both state and federal law is impossible, ... or when the state law 'stands as an obstacle to the accomplishment and execu-

tion of the full purposes and objectives of Congress.' "

*Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984).

"Federal regulations have no less preemptive effect than federal statutes. Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily. When the administrator promulgates regulations intended to pre-empt state law, the court's inquiry is similarly limited: 'If [h]is choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.' " Id.

*Capital Cities Cable, Inc.,* dealt with the preemption of state regulation of retransmission by cable television systems. At 2700 the court said, "The power delegated to the FCC plainly comprises authority to regulate the signals carried by cable television systems." Years earlier the court, in a case involving radio advertising, said: "It is to be noted that this case in no way involves the *Commission's jurisdiction over technical matters such as a frequency allocation, over which federal control is clearly exclusive.*" (Emphasis added.) *Head v. New Mexico Bd. of Exam. in Optometry,* 374 U.S. 424, 431, 83 S.Ct. 1759, 1763, 10 L.Ed.2d 983 (1963). It seems clear that interference caused by radio transmission is similarly a technical matter and that the FCC's control thereof is exclusive. Both Congress and the FCC have acted in that area.

The Federal Communications Act, 47 U.S.C.A. § 151, et seq., (hereinafter "the Act"), contains provisions dealing with interference, including § 303(f) which reads, in pertinent part:

"Except as otherwise provided in this chapter, the Commission from time to time, as public convenience, interest, or necessity requires, shall—

.    .    .    .    .

(f) Make such regulations not inconsistent with law as it may deem necessary to prevent interference between stations and to carry out the provisions of this chapter."

Other portions of the Act dealing with interference include § 301(d), § 302a(a), § 303(m)(1)(E), § 305(a), § 306, § 320, § 321, § 323, § 354(b) and (c).

The Commission has promulgated regulations dealing with the matter of interference, 47 CFR, Part 73. Sections in the 10–1–88 edition of those regulations include the following: § 73.209, "protection from interference"—dealing with permittees and licensees of FM broadcast stations; § 73.318, dealing with FM blanketing interference; § 73.612, dealing with "protection from interference" of permittees and licensees of television broadcast stations; and § 73.1030, dealing with "notifications concerning interference to radio astronomy, research and receiving installations." Section 73.4000 deals with "listing of FCC policies," and *among those listed is § 73.4135 dealing with "interference to TV reception by FM stations."*

"The Commission's authority to regulate broadcasting and other communications is derived from the Communications Act of 1934, as amended.... The Commission was expected to serve as the 'single Government agency' with 'unified jurisdiction' and 'regulatory power over all forms of electrical communication, whether by telephone, telegraph, cable, or radio.' It was for this purpose given 'broad authority.' As this Court emphasized in an earlier case, the Act's terms, purposes, and history all indicate that Congress 'formulated a unified and comprehensive regulatory system for the [broadcasting] industry.' *F.C.C. v. Pottsville Broadcasting Co.,* 309 U.S. 134, 137, 60 S.Ct. 437, 439, 84 L.Ed. 656."

*United States v. Southwestern Cable Co.,* 392 U.S. 157, 167, 88 S.Ct. 1994, 2000, 20 L.Ed.2d 1001 (1968).

Although "the views of one Congress as to the construction of a statute adopted many years before by another Congress have very little, if any, significance," *United States v. Southwestern Cable Co.*, supra, 88 S.Ct. at 2001, the legislative history dealing with the amendment, in 1982, of § 302(a) of the Act is noteworthy. That amendment dealt with establishing minimum performance standards for home electronic equipment and systems to reduce their susceptibility to interference from radio frequency energy. The conference substitute which adopted the Senate provision amending § 302(a) contained the following comment:

> "The Conference Substitute is further intended to clarify the reservation of *exclusive jurisdiction to the Federal Communications Commission over matters involving RFI* [radio frequency interference]. *Such matters shall not be regulated by local or state law, nor shall radio transmitting apparatus be subject to local or state regulation as part of any effort to resolve an RFI complaint. The Conferees believe that radio transmitter operators should not be subject to fines, forfeitures or other liability imposed by any local or state authority as a result of interference appearing in home electronic equipment or systems. Rather, the Conferees intend that regulation of RFI phenomena shall be imposed only by the Commission.*" (Emphasis added.)

U.S.Code Cong. & Admin.News, 97th Cong.2d Sess. 1982, pp. 2237, 2277.

Seeking to uphold the jurisdiction of the trial court, plaintiffs cite § 414 of the Act, which reads: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." The same argument was made by the plaintiffs in *Blackburn*. Rejecting that argument, the Minnesota court said, at 554–555:

> "The United States Supreme Court, however, has refused to read such clauses so literally. In *Texas & Pacific Railway v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), the

Court, despite the existence of a saving clause virtually identical to section 414, struck down a state common law cause of action challenging a rail carrier's rate as 'unjust and unreasonable.' The court did so because rate regulation was within the exclusive jurisdiction of the Interstate Commerce Commission, and a state court action 'would be absolutely inconsistent with the provisions of the act.' *Texas & Pacific Railway*, 204 U.S. at 446, 27 S.Ct. at 358. See also *Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318–19, 101 S.Ct. 1124, 1130–31, 67 L.Ed.2d 258 (1981). Later, the United States Supreme Court described the saving clause discussed in *Texas & Pacific Railway* as follows:

> > That proviso was added at the end of the statute,—not to nullify other parts of the Act, or to defeat rights or remedies given by preceding sections,—but to preserve all existing rights which were not inconsistent with those created by the statute.

> *Pennsylvania Railroad v. Puritan Coal Mining Co.*, 237 U.S. 121, 129, 35 S.Ct. 484, 486, 59 L.Ed. 867 (1915). The Court recently cited with approval that construction of a saving clause identical to the one involved in this case. See *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 298–300, 96 S.Ct. 1978, 1984–1985, 48 L.Ed.2d 643 (1976). Thus, even in light of 47 U.S.C. § 414, the preemption question turns on whether there exists an irreconcilable conflict between the purposes of the Federal Communications Act and the common-law remedy at issue."

In *Blackburn*, after concluding that Congress intended to exercise exclusive jurisdiction over regulating interference between radio station signals, the court said, at 556:

> "Thus, the question becomes whether enforcement of the instant state law claim would be inconsistent with that intent. Plaintiffs here are seeking damages and injunctive relief because the IDS stations' signals allegedly constitute a nuisance by interfering with their re-

ception of other desired signals. To resolve that claim, the state court would be required to determine just what level of interference, if any, is inappropriate between these broadcasters. That, however, is precisely the subject matter which lies within the exclusive regulatory jurisdiction of the FCC. It is quite apparent, therefore, that the state court may reach results which conflict with the regulations imposed on defendants by the FCC. Such a result is clearly irreconcilable with Congress' expressed intent that the FCC should exercise exclusive jurisdiction over regulating this subject matter."

This court holds that the trial court determined correctly that it lacked subject matter jurisdiction.

The order of dismissal is affirmed.

HOGAN, C.J., and PREWITT, J., concur.