**ZIMMER RADIO OF MID–MISSOURI, INC., Plaintiff/Appellant,**

v.

**LAKE BROADCASTING, INC., Kenneth W. Kuenzie, Michael S. Rice, and Jeffrey Weinhaus, Defendants/Respondents.**

No. 71275.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 21, 1997.

1. Our disposition of movant's point on appeal renders moot the state's amended motion to remand.

Craig A. Smith, Mark B. Weinheimer, Suelthaus & Walsh, P.C., St. Louis, for Plaintiff/Appellant.

David Wells, Daniel C. Cox, Thompson & Mitchell, St. Louis, for Defendants/Respondents.

GARY M. GAERTNER, Judge.

Plaintiff/appellant, Zimmer Radio of Mid–Missouri ("Zimmer"), appeals the judgment of the Circuit Court of St. Louis County dismissing its action for tortious interference with business expectancies against defendants/respondents Lake Broadcasting, Inc., Kenneth W. Kuenzie, Michael S. Rice, and Jeffrey Weinhaus (collectively, "defendants"). We affirm.

Zimmer is the owner and operator of radio station KCMQ FM, located in Columbia, Missouri. Zimmer's predecessor in title, the Greenfield Group ("Greenfield"), assigned the station's operating license to Zimmer in 1993. Prior to this assignment, on July 30, 1992, Greenfield filed a Petition for Rulemaking and Request for Authorization with the Federal Communications Commission ("the FCC") at the request and with the assistance of Zimmer. This petition requested an upgrade of the station from Class C3 to Class C1, and an increase in the station's power from 25,000 watts to 100,000 watts.

On November 12, 1992, Lake Broadcasting, Inc. ("Lake") filed an application with the FCC for construction of a new station in Bourbon, Missouri. Defendant Rice owned sixty-seven and one-half percent of Lake, while defendant Kuenzie owned twelve and one-half percent. Rice was also the owner of radio station KFMX FM, a local competitor of KCMQ. Further, defendant Weinhaus (a former employee of Kuenzie) and Tony Knipp (a former co-worker with Kuenzie) filed separate counterproposals seeking allotments for two new FM stations in Leasburg, Missouri, and Gerald, Missouri; these counterproposals were put on public notice by the FCC on December 29, 1992.[1]

Zimmer's upgrade request with the FCC was still pending on February 18, 1994, when Zimmer filed a petition in state court asserting a claim of tortious interference with business expectancies against each defendant. Zimmer's petition alleged the following with respect to all four counts:

13 .... an increase from 25,000 watts to 100,000 watts for radio station KCMQ (FM) would significantly increase Plaintiff's geographic service area, market audience, and as a result would increase revenues, and net worth.

14. Plaintiff had a reasonable expectation the FCC would approve Plaintiff's request for an increase from 25,000 to 100,000 watts ... pursuant to the Upgrade Petition.

15. After Plaintiff's filing of the Upgrade Petition, Defendants and others conspired together to file with the FCC an application for a construction permit for a new station in Bourbon, Missouri, and counterproposals for allotments for two new FM stations for the purpose of impeding, obstructing, and delaying Plaintiff's ability to upgrade the class and increase the effective radiated power of radio station KCMQ (FM), located in Columbia, Missouri.

16. The filing of applications for new stations and counterproposals for new allotments to impede inauguration of competitive broadcast services violates FCC

---

1. Both Knipp and Weinhaus would later withdraw their respective counterproposals: Knipp on December 20, 1993, and Weinhaus on June 7, 1994.

regulations (including, but not limited to, 47 C.F.R. 73.1015) and is a violation of the Communications Act of 1934.

In Count I, a claim of tortious interference with business expectancy against Lake, the petition stated:

18. Defendant Lake knew of Plaintiff's reasonable expectation of upgrading the class and increasing the effective radiated power for radio station KCMQ (FM) and the corresponding increase in geographic service area, market audience, revenues, and net worth for Plaintiff that would result from the FCC's approval of the Upgrade Petition.

19. Defendant Lake intentionally and willfully interfered with Plaintiff's valid business expectancy of increasing the geographic service area, market audience, revenues, and net worth for radio station KCMQ (FM) by conspiring and causing to be filed an Application for the Bourbon, Missouri, FM channel and rulemaking counterproposals ... with the FCC with knowledge the Applicants lacked the requisite intent to construct the proposed facilities, and which were instituted by Defendant Lake without just cause or excuse.

20. Defendant Lake's actions were outrageous and knowingly or recklessly done without regard for the Plaintiff, without justification, and were done to impede, obstruct, and delay Plaintiff's Upgrade Petition and/or force Plaintiff to abandon its Upgrade Petition....

21. As a direct and proximate result of Defendant Lake's actions, Plaintiff's Upgrade Petition has been delayed, and Plaintiff has incurred damages including, but not limited to, engineering, consulting, and legal expenses and lost revenues of a progressive and continuing amount, and has been damaged in an amount far exceeding $15,000.

Identical allegations were set out in Counts II, III, and IV against defendants Rice, Kuenzie, and Weinhaus.

On April 8, 1994, Kuenzie filed a notice of removal in federal district court, alleging Zimmer's cause of action arose out of the Federal Communications Act, 47 U.S.C. §§ 151 et seq. (1991) ("the FCA"). On April 29, Zimmer filed a motion to remand, asserting its petition stated a claim under state tort law.

On May 27, 1994, the United States District Court for the Eastern District of Missouri issued an order granting Zimmer's motion to remand on the ground the petition did not state a claim "arising under the Constitution, laws, or treaties of the United States." In its order, the district court noted that complaints alleging the violation of a federal statute as an element of a state cause of action do not state a claim "arising under the Constitution, laws, or treaties of the United States" if the statute in question does not provide for a private, federal cause of action. The court then found the FCA did not provide for such a private right of action. In reaching its decision, the district court noted, "The field of communications is pre-empted by federal law and causes of action thereunder are not traditionally relegated to state law[,]" and added in an accompanying footnote:

... In the instant case, the complete preemption doctrine exception ... does not apply to the FCA because of the lack of a private right of action, as discussed herein. The court need not discuss the effect of a pre-emption defense on plaintiff's state cause of action.

Cause was remanded to state court. On August 10, 1995, three of the four defendants filed a motion to dismiss Zimmer's petition, alleging as one of their grounds the preemption of Zimmer's state law tort claims.

On November 24, 1995, the FCC released a Report and Order granting Zimmer's upgrade request, dismissing the counterproposals withdrawn by Weinhaus and Knipp, and granting Lake an opportunity to amend its application for construction of the Bourbon, Missouri, station. The FCC further found, "[w]ith respect to Greenfield and Zimmer's allegation that the application filed by Lake Broadcasting could have been filed merely to block the requested upgrade for Station KCMQ(FM), Greenfield and Zimmer have failed to provide proof of this allegation."

On December 5, 1995, the trial court dismissed Zimmer's petition, stating, "... [T]he

Federal Communications Commission's rules and regulations pre-empt this area of litigation such that the cause must be dismissed." Zimmer appealed.

On June 28, 1996, this Court dismissed the original appeal of this cause on the ground the judgment was not final with respect to all the parties, and the trial court had not expressly determined there was no just reason for delay of entry of final judgment pursuant to Rule 74.01(b). *Zimmer Radio v. Lake Broadcasting,* 924 S.W.2d 615, 616 (Mo.App. E.D.1996). On September 10, 1996, the trial court entered an order finding no just reason for delay and granting leave to appeal its December 5, 1995, judgment. This appeal followed.

On appeal, Zimmer contends the trial court erred in dismissing its petition, because the FCA expressly preserved preexisting state common law tort claims by means of its "savings clause," 47 U.S.C. § 414, which states:

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

According to Zimmer, its claims of tortious interference do not conflict with any provisions of the FCA and thus are not preempted.

In response, defendants argue Zimmer's claims constitute an obstacle to the full purpose and objectives of Congress in enacting the FCA and are not saved by 47 U.S.C. § 414, as the claims "directly related to and were not distinguishable from the duties attendant to the FCA's licensure and counterproposal process. As such, [Zimmer]'s claims did not relate to an 'existing' remedy as required by the FCA's savings clause. Rather, they related to a business expectation in a property right created by the FCA." We agree with defendants' arguments and affirm the dismissal of Zimmer's petition.

■ State law may be preempted by federal law under the following circumstances: (1) Congress, in enacting the federal law, expressed a clear intent to preempt state law; (2) despite the absence of express preemptive language, Congress clearly intended, by legislating comprehensively, to occupy an entire field of regulation; or (3) compliance with both federal and state law is impossible, or the state law is an obstacle to the accomplishment of Congress' purposes and objectives in enacting the federal law. *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698–699, 104 S.Ct. 2694, 2699–2700, 81 L.Ed.2d 580 (1984); *Smith v. Calvary Educ. Broadcasting,* 783 S.W.2d 533, 534–535 (Mo. App. S.D.1990). If Zimmer's cause of action falls within one of these scenarios, it is preempted, regardless of the FCA's savings clause; " 'even in light of 47 U.S.C. § 414, the preemption question turns on whether there exists an irreconcilable conflict between the purposes of the Federal Communications Act and the common-law remedy at issue.' " *Smith,* 783 S.W.2d at 536 (quoting *Blackburn v. Doubleday Broadcasting,* 353 N.W.2d 550, 555 (Minn.1984)). For the reasons set forth below, we find Zimmer's cause of action preempted by the FCA.

The FCA governs wire and radio communication and provides that its provisions apply to "the licensing and regulating of all radio stations as hereinafter provided[.]" 47 U.S.C. § 152(a). 47 U.S.C. § 301 asserts the supremacy of federal control over radio:

> It is the purpose of this chapter, ... to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license....

The FCC is vested with the authority to assign frequencies to stations and determine the power each station shall use, and to issue regulations necessary to carry out the provisions of the chapter. 47 U.S.C. § 303. The FCC is further vested with the authority to "grant to any applicant therefor a station license provided for by this chapter[,]" 47 U.S.C. § 307(a), and to "make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, effi-

cient, and equitable distribution of radio service to each of the same." 47 U.S.C. § 307(b). 47 U.S.C. § 308 sets out the requirements for applying for a station license, or a modification or renewal thereof. 47 U.S.C. § 309 sets out the considerations of the FCC in granting licenses, the procedures followed by the FCC in granting applications for licenses, and the procedures for filing petitions to deny applications. 47 U.S.C. § 312 provides administrative sanctions for violations of the chapter or of any rules or regulations promulgated thereunder.

■ Zimmer's petition alleged defendants filed an application for a construction permit for a new radio station, and counterproposals regarding Zimmer's petition to upgrade its broadcasting power, in violation of the FCA and of FCC regulations. This petition was filed before Zimmer's application for an upgrade was even ruled on by the FCC, and sought a state court's determination on the legitimacy of defendants' application and counterproposals. The above statutory scheme places the exclusive responsibility for such determinations with the FCC. We think it clear that allowing a state court to second-guess the FCC on the validity of an application for a construction permit or counterproposal would create an obstacle to, and conflict with, accomplishment of Congress' purposes and objectives in enacting the FCA. We therefore find Zimmer's cause of action preempted.

■ This holding is not affected by the FCA's savings clause, which preserves "remedies now existing at common law or by statute," 47 U.S.C. § 414. As noted above, if there is a conflict between the FCA and the common law remedy at issue, the latter is preempted. *Smith,* 783 S.W.2d at 536; *Blackburn,* 353 N.W.2d at 555. Further, the savings clause preserves only those causes of action that are based upon breaches of duties distinct from, and not created or contemplated by, the FCA. *MCI Telecommunications v. Garden State Inv.,* 981 F.2d 385, 387 (8th Cir.1992); *Comtronics, Inc. v. Puerto Rico Tel. Co.,* 553 F.2d 701, 707–708 n. 6 (1st Cir.1977); *KVHP TV Partners, Ltd. v. Channel 12 of Beaumont, Inc.,* 874 F.Supp. 756, 762 (E.D.Tex.1995); *Bruss Co. v. Allnet*

*Communication Services, Inc.,* 606 F.Supp. 401, 410–411 (N.D.Ill.1985); *Kaplan v. ITT–U.S. Transmission Systems, Inc.,* 589 F.Supp. 729, 735–736 (E.D.N.Y.1984). If a plaintiff's action "grows out of and depends upon" the FCA, or is based upon property rights or duties created under the FCA, the savings clause does not preserve the action. *See MCI Telecommunications,* 981 F.2d at 387; *Comtronics,* 553 F.2d at 707–708 n. 6.

■ A claim of tortious interference with business expectancies requires pleading and proof of, *inter alia,* an absence of justification, or the use of improper means to induce a breach in a business relationship or expectancy. *SSM Health Care, Inc. v. Deen,* 890 S.W.2d 343, 346 (Mo.App. E.D.1994). Such means must be independently wrongful and recognized by statute or common law as wrongful, such as misrepresentations of fact, defamation, and restraint of trade. *Id.* Common law claims of tortious interference with business relations or expectancies are preserved by the FCA's savings clause and are not preempted where the wrongful acts complained of constitute breaches of duties distinguishable from those created under the FCA. *See KVHP TV Partners, Ltd.,* 874 F.Supp. at 762 (agreement between defendants to restrict or prevent plaintiff from airing same shows as defendants); *Cooperative Communications, Inc. v. AT & T Corp.,* 867 F.Supp. 1511, 1516 (D.Utah 1994) (intentional misrepresentations by defendant to plaintiff's customers).

Here, however, Zimmer's petition asserted the wrongful act allegedly committed by each defendant was a violation of the FCA: "The filing of applications for new stations and counterproposals for new allotments to impede inauguration of competitive broadcast services violates FCC regulations (including, but not limited to, 47 C.F.R. 73.1015) and is a violation of the Communications Act of 1934." The petition further alleges defendants tortiously interfered with Zimmer's "reasonable expectation of upgrading the class and increasing the effective radiated power for radio station KCMQ (FM) and the corresponding increase in geographic service area, market audience, revenues, and net worth for Plaintiff that

would result from the FCC's approval of the Upgrade Petition." Thus, the business expectancy allegedly interfered with by defendants was created under the FCA, and defendants' wrongful acts as set out in the petition were expressly predicated upon the FCA.

"Section 414 preserves causes of action for breaches of duties that are not created under the Communications Act." *MCI Telecommunications,* 981 F.2d at 387. The duties allegedly breached by defendants, and the property right interfered with as a result of this breach, were created under the FCA; Zimmer's action would constitute an additional remedy for the violations of the FCA. The savings clause does not preserve remedies "so closely dependent upon the Act itself;...." *Comtronics,* 553 F.2d at 707–708 n. 6. The FCA's savings clause therefore did not apply to preserve Zimmer's suit.

Zimmer's common law action for tortious interference with business expectancies was preempted by federal law. The trial court did not err in dismissing Zimmer's petition. Accordingly, the judgment is affirmed.

GERALD M. SMITH, P.J., and RHODES RUSSELL, J., concur.