[693 NYS2d 286]

J. TAYLOR MONFORT et al., Appellants, v BRIAN A. LARSON et al., Respondents.

Third Department, July 8, 1999

**APPEARANCES OF COUNSEL**

*Gerard C. DeCusatis,* Amsterdam, for appellants.
*William Reynolds,* Schuylerville, for respondents.

**OPINION OF THE COURT**

SPAIN, J.

Plaintiff GEM Associates Limited Partnership is the owner and licensee of WBKK-FM 97.7, a radio station located in the City of Amsterdam, Montgomery County. Plaintiff MEG Company Inc. is the general partner of GEM and plaintiff J. Taylor Monfort is the president and sole shareholder of MEG, with full authority to act on behalf of MEG and GEM. Defendant Brian A. Larson is the sole owner and licensee of radio station WNGN-FM 97.5 located in rural Rensselaer County. Both radio stations are licensed by the Federal Communications Commission (hereinafter FCC). Plaintiffs purchased WBKK in November 1994. In December 1996, the FCC notified Larson that WNGN was not in compliance with FCC rules and regulations in that its modulation was in excess of that allowed.

Plaintiffs subsequently commenced this action in April 1998 seeking damages as well as to enjoin defendants from operating Larson's radio station—WNGN—in excess of the limits imposed by the FCC. Plaintiffs asserted tort causes of action sounding in negligence, nuisance and intentional tort, all of which are based on the alleged radio interference by WNGN. Plaintiffs also asserted a breach of contract cause of action in their complaint based on alleged oral representations by Larson to sell WNGN to Monfort. Plaintiffs maintain that in January 1997, the radio interference from WNGN ceased, but that it eventually resumed in September 1997 and continued through the commencement of this action. Plaintiffs specifically contend that during the relevant period the signal from WNGN was "frequently broadcast at power and modulation levels in excess of the power and modulation levels authorized by [F]ederal laws and regulations" and, as a result, WNGN's signal could be heard on radios tuned to WBKK, and that this radio interference has resulted in plaintiffs' loss of listeners, advertisers, and profits.

Defendants answered, denying any radio interference and the existence of any form of contract. In addition, defendants counterclaimed alleging intentional interference with a pending contract of sale for WNGN by Larson to a third party. Defendants also set out an affirmative defense of lack of subject matter jurisdiction. Plaintiffs moved for a preliminary injunction and, in opposition, defendants argued that plaintiffs' common-law tort causes of action were within the exclusive jurisdiction and regulatory authority of the FCC. Supreme Court

agreed with defendants and dismissed the entire complaint. Plaintiffs appeal.

The issue of whether a State court has subject matter jurisdiction to entertain tort causes of action based upon radio frequency interference appears to be a question of first impression in the courts of New York. The regulation of radio communication is governed by the Federal Communications Act ([hereinafter FCA] 47 USC § 151 *et seq.*). In section 151 of the FCA, Congress set forth its purposes and created the FCC, indicating that "there is created a commission to be known as the 'Federal Communications Commission' * * * which shall execute and enforce the provisions of this chapter" (47 USC § 151). Furthermore, the FCA states that "[n]o person shall willfully or maliciously interfere with or cause interference to any radio communications of any station licensed or authorized by or under this chapter or operated by the United States Government" (47 USC § 333).

It is undisputed that plaintiffs based their tort claims on the alleged radio signal interference by Larson. Defendants contend that, by virtue of the above Federal statutory provisions, plaintiffs' common-law tort claims are preempted by Federal law. Plaintiffs assert that their claims are not preempted, relying on the FCA's savings clause, which states that "[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies" (47 USC § 414).

Congressional preemptive intent is discernible in three alternate ways: "(1) expressly in the language of the Federal statute; (2) implicitly, when the Federal legislation is so comprehensive in scope that it is inferable that Congress intended to fully occupy the 'field' of its subject matter; or (3) implicitly, when State law actually 'conflicts' with Federal law" (*Drattel v Toyota Motor Corp.*, 92 NY2d 35, 42). We agree with plaintiffs that the FCA contains no express preemption provision; however, we reject their contention that the quoted FCA savings clause demonstrates the absence of implied preemption by Congress.

It has been recognized that an "[e]xamination of the [FCA], the legislative history and case law compels the conclusion that the FCC has exclusive jurisdiction over complaints involving radio frequency interference" (*In re Freeman,* 975 F Supp 570, 575; *accord, Still v Michaels,* 166 Ariz 403, 404, 803 P2d 124, 125; *see also, Blackburn v Doubleday Broadcasting*

*Co.*, 353 NW2d 550 [Minn]; *Southwestern Bell Wireless v Board of County Commrs.*, 17 F Supp 2d 1221). Thus, claims of radio frequency interference must be brought to the FCC (*see, In re Freeman, supra*, at 575), which has exclusive jurisdiction " 'over technical matters' associated with the transmission of radio signals" (*Broyde v Gotham Tower*, 13 F3d 994, 997, *cert denied* 511 US 1128, quoting *Head v New Mexico Bd. of Examiners in Optometry*, 374 US 424, 430, n 6). The radio signal interference at issue *sub judice* falls within the FCC's technical domain (*see, Broyde v Gotham Tower, supra*). In *Broyde v Gotham Tower* (*supra*), the United States Court of Appeals for the Sixth Circuit dismissed a State law nuisance action brought by homeowners and area residents against a radio station for transmitting its radio signals in excess of Federal limits and consequential radio interference, on the ground that it was preempted by the FCA (*id.*, at 997-998; *see, Blackburn v Doubleday Broadcasting Co., supra*, at 555-556). In *Fetterman v Green* (455 Pa Super 639, 689 A2d 289, *appeal denied* 548 Pa 648, 695 A2d 786), a radio station licensee sued another licensee asserting, *inter alia*, negligence and nuisance, based upon alleged radio frequency interference. The Pennsylvania Superior Court held that Congress, through the FCA, has impliedly preempted State common law in the area of interference with radio signal transmission and divested State courts of subject matter jurisdiction to entertain such claims, which are not preserved by the FCA's savings clause (*id.*, 455 Pa Super, at 648-649, 689 A2d, at 294). In view of the "irreconcilable conflict between the FCC's exercise of exclusive jurisdiction over the regulation of radio frequency interference and the imposition of common-law standards in a damages action" (*Broyde v Gotham Tower, supra*, at 997), we agree that State law-based claims are impliedly preempted (*see, Zimmer Radio v Lake Broadcasting*, 937 SW2d 402, 406 [Mo Ct App] [where there is a conflict between the FCA and the common-law remedy at issue, the latter is preempted]). We agree that "the savings clause preserves only those causes of action that are based upon breaches of duties distinct from, and not created or contemplated by, the FCA" (*id.*, at 406). Regardless of the language used in the complaint, the gravamen of plaintiffs' tort causes of action is that Larson's transmission of WNGN interfered with plaintiffs' WBKK radio frequency. Accordingly, plaintiffs' tort claims, which are clearly based upon alleged radio frequency interference, were properly dismissed as they conflict with the FCA and fall within the exclusive jurisdiction of the FCC (*see, Broyde*

*v Gotham Tower, supra; Fetterman v Green, supra; see also, Southwestern Bell Wireless v Board of County Commrs.*, 17 F Supp 2d 1221, *supra; Smith v Calvary Educ. Broadcasting Network*, 783 SW2d 533 [Mo Ct App]).

■ Plaintiffs' fourth cause of action alleging breach of contract should not have been dismissed. Plaintiffs' claim that Larson was contractually obligated to sell his radio station to Monfort is based upon a common-law duty which is distinct from, and not created or contemplated by, the FCA; it clearly does not come under the exclusive jurisdiction of the FCC and is the type of claim preserved by the FCA saving clause (*see, Zimmer Radio v Lake Broadcasting, supra*, at 406).

MIKOLL, J. P., MERCURE, CREW III and YESAWICH JR., JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as dismissed plaintiffs' breach of contract cause of action, and, as so modified, affirmed.