**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 27 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SOUTHWESTERN BELL WIRELESS
INC., fka Southwestern Bell Mobile
Systems, Inc. as General Partner of
Kansas City SMSA Limited
Partnership and KANSAS CITY
SMSA LIMITED PARTNERSHIP,

        Plaintiffs - Appellees,

  v.

JOHNSON COUNTY BOARD OF
COUNTY COMMISSIONERS,

        Defendant - Appellant.

No. 98-3264

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. CV97–2481-GTV)**

---

Donald D. Jarrett, Chief Counsel (Richard J. Lind, Deputy County Counselor, with him on the brief), Johnson County Legal Department, Olathe, Kansas, for appellant.

Diane P. Duvall (Curtis M. Holland with her on the brief), Polsinelli, White, Vardeman & Shalton, Overland Park, Kansas, for appellees.

---

Before **ANDERSON** , **McWILLIAMS** , and **BALDOCK** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

Plaintiffs, referred to collectively herein as SW Bell, [1] brought this suit against the Board of County Commissioners of Johnson County, Kansas ("BOCC"), seeking a declaration that federal law preempts a county zoning regulation involving radio frequency interference [2] ("RFI"), and an injunction against enforcement of the regulation. The district court granted summary judgment in favor of SW Bell, invalidating the regulation as impliedly preempted by federal law and implicitly rejecting the BOCC's contention that such preemption violates the Tenth Amendment's reservation of state powers. The BOCC challenges those conclusions, and also contends that the court's order is overbroad, and that issues of fact preclude summary judgment. For the reasons stated below, we agree with the district court and hold that (1) the BOCC's RFI regulation is impliedly preempted by federal law, (2) this preemption does not violate the Tenth Amendment, (3) the district court's order is not overbroad, and (4) the district court did not otherwise err. Accordingly, we affirm.

[1]Plaintiffs include Southwestern Bell Wireless Inc., f/k/a Southwestern Bell Mobile Systems, Inc., as general partner of Kansas City SMSA Limited Partnership, and Kansas City SMSA Limited Partnership.

[2]RFI occurs "when a signal radiated by a transmitter is picked up by an electronic device in such a manner that it prevents the clear reception of another and desired signal or causes malfunction of some other electronic device." H.R. Conf. Rep. No. 97-765, at 21 (1982), reprinted in 1982 U.S.C.C.A.N. 2261, 2265.

# I. BACKGROUND

The BOCC exercises planning and zoning authority in the unincorporated portions of Johnson County, Kansas. SW Bell holds a license from the Federal Communications Commission ("FCC" or "Commission") to construct and operate a wireless telecommunications network in the Kansas City Metropolitan Area including Johnson County. Wireless communications are transmitted by radio at a frequency assigned by the FCC. Pursuant to its FCC license, SW Bell is obligated to provide wireless telecommunications services to its customers. The county public safety departments (including police and fire) also broadcast over emergency frequencies assigned by and under licenses from the FCC.

On March 21, 1997, SW Bell, acting on behalf of William L. and Marilyn M. Wolff, applied to the BOCC for a conditional use permit to construct a 150-foot monopole communications tower for use by SW Bell on the Wolffs' property in unincorporated Johnson County. On August 21, 1997, the BOCC approved the conditional use permit subject to certain restrictions including one entitled "Interference with Public Safety Communications" ("Interference Stipulation"). See OL-CU7714, Stipulation 15; Complaint, Appellant's App. Vol. 2 at 155. The Interference Stipulation nearly replicates a zoning regulation amendment adopted by the BOCC on June 26, 1997 ("Interference Regulation"). Under the Interference Regulation, communication towers and antennae cannot

operate in a manner that interferes with public safety communications. See

Johnson County Zoning & Subdivision Regs., art 23, § 6(B)(4)(f). The

Interference Regulation grants the county's zoning administrator authority to

determine when interference exists and, after proper notice and opportunity for a

hearing, to force the antenna site to cease operations. The Interference

Regulation provides, in pertinent part, as follows:

> 2) [The permit holder] shall be responsible, immediately upon notification by the Zoning Administrator or the public safety agency, to investigate the cause of the interference, disruption, or degradation and to determine a method . . . to remedy the problem.
> . . .
> 3) [The permit holder] shall, within 24 hours after receiving notice of the disruption, remedy the problem or show to the satisfaction of the Zoning Administrator that the tower or other site equipment is not the cause of the interference or disruption. If the interference . . . causing the functional interruption is not remedied within the 24 hours, then the Zoning Administrator may upon two days written notice to the [permit holder], set a hearing to show cause why the applicable Permit shall not be terminated and the site . . . shall not cease operation until the problem is remedied. The hearing shall be temporarily stayed [for two days], however, if the [permit holder] seeks immediate technical assistance and advice . . . from the FCC.
> . . .
> 5) [The permit holder] shall be responsible for the payment of costs to cure the interference . . . including the fees of any experts retained to identify or correct the problem . . . .

Id. § 6(B)(4)(f) (emphasis added).

Before adopting the Interference Regulation, the BOCC was aware of FCC

authority and regulations in the RFI area. On June 1, 1997, county staff had a

telephone conference with local FCC staff regarding the resolution of possible

-4-

interference with public safety communications.  Apparently, the county felt the FCC could not resolve interference issues as quickly as the county wanted.         See Appellant's Br. at 5, ¶ 13.  Additionally, on about June 18, 1997, after contact from SW Bell, an FCC representative from Washington, D.C., telephoned the Johnson County Legal Department and requested an opportunity to discuss the Interference Regulation.  Further, SW Bell and other wireless communications providers participated in public hearings and provided written comments about the Interference Regulation and "argued that the BOCC was without authority to adopt such a regulation because, under federal law, the regulatory authority governing this aspect of wireless telecommunications services is exclusively reserved to the FCC, and pursuant to such authority, the FCC has already adopted regulations governing radio-frequency interference."  Pls.' Compl. at 5, ¶ 24; Appellant's App. Vol. I at 6.

On July 2, 1997, after adoption of the Interference Regulation but prior to the BOCC approval of the SW Bell permit with the Interference Stipulation, David L. Furth, Commercial Wireless Division Chief of the FCC's Telecommunications Bureau, wrote to Roger Kroh, Johnson County Director of Planning and Development.  Mr. Furth stated that the Interference Regulation was preempted by the Communication Act of 1934 as amended, 47 U.S.C. §§ 151 et seq., citing legislative history and case law.  In addition, he advised Mr. Kroh of

the FCC procedures currently in place to handle public safety interference complaints, including a twenty-four hour emergency FCC contact number.

## II. DISCUSSION

We review summary judgment rulings de novo, applying the same standard as the district court. See Bell v. United States, 127 F.3d 1226, 1228 (10th Cir. 1997). Summary judgment is proper under Fed. R. Civ. P. 56(c) if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Id.

## A. Preemption

The BOCC argues that the district court erred in determining that federal law preempts the Interference Regulation. Congress has the power to preempt state and local law under the Supremacy Clause, which states that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding," U.S. Const. art. VI, cl. 2. Congress's preemption power extends over both state and local ordinances. See Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 605 (1991). Federal law preempts state or local law in three situations:

> (1) express preemption, which occurs when the language of the federal statute reveals an express congressional intent to preempt state law . . . ;

-6-

(2) field preemption, which occurs when the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for a State to supplement it; and (3) conflict preemption, which occurs either when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Mount Olivet Cemetery Ass'n v. Salt Lake City, 164 F.3d 480, 486 (10th Cir. 1998) (considering preemption of local zoning ordinance) (citing Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 31 (1996)). The Interference Amendment (and thus the Interference Stipulation) is invalid if preempted by federal law.

### 1. Express Preemption

To find express preemption, Congress must have explicitly stated by statute its intent to preempt state and local regulation of RFI issues. The district court found no express preemption of RFI issues but found both field and conflict preemption by federal communications law. We agree that federal communications legislation lacks any statement expressly preempting local regulation of RFI. See also In re Freeman, 975 F. Supp. 570, 573 (D. Vt. 1997) (finding no express preemption of RFI regulation). Thus, we next examine whether the Interference Amendment is impliedly preempted by exclusive federal occupation of the RFI field.

## 2. Field Preemption

"In the absence of an express preemption provision, state or local law may be preempted if it attempts to regulate conduct in a field that Congress, by its legislation, intended to be occupied exclusively by the federal government." Mount Olivet, 164 F.3d at 487 (citing English v. General Elec. Co., 496 U.S. 72, 79 (1990)).

> Field preemption may be inferred if a federal scheme of regulation is so pervasive that Congress must have intended to leave no room for a state to supplement it or if an Act of Congress touches a field in which the federal interest is so dominant the federal system is assumed to prohibit enforcement of state laws on the same issue.

Id. at 487 (citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). We examine three aspects of federal communications law to determine whether and to what extent federal law preempts local regulation of RFI issues: Congressional legislation, agency regulation, and agency adjudication.

Congress, in the Communications Act of 1934, created a "unified and comprehensive regulatory system for the [broadcasting] industry." National Broad. Co. v. United States, 319 U.S. 190, 214 (1943). Congress stated that a purpose of the act was "to maintain the control of the United States over all the channels of radio transmission." 47 U.S.C. § 301. The Act created the FCC and empowers it to regulate radio communications including "technical and

engineering aspects." [3] <u>National Broad. Co.</u>, 319 U.S. at 215; <u>see also</u> <u>Head v. New Mexico Bd. of Exam'rs</u>, 374 U.S. 424, 430 n.6 (1963) (noting FCC's exclusive jurisdiction over technical matters regarding radio signal transmission). The Communications Act applies to "all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States." 47 U.S.C. § 152(a).

In 1982, and again in 1996, Congress significantly amended the Act. In the Communications Amendments Act of 1982, Congress gave the FCC the explicit authority to regulate home electronic equipment with the potential to cause RFI. <u>See</u> 47 U.S.C. § 302a(a). The House Conference Report that accompanied the 1982 Amendments clarified that "exclusive jurisdiction over RFI incidents (including pre-emption of state and local regulation of such phenomena) lies with the FCC." H.R. Conf. Rep. No. 97-765, at 23 (1982), <u>reprinted in</u> 1982 U.S.C.C.A.N. 2261, 2267. It stated further that:

> [s]uch matters [involving RFI] shall not be regulated by local or state law, nor shall radio transmitting apparatus be subject to local or state regulation as part of any effort to resolve an RFI complaint. The Conferees believe that radio transmitter operators should not be subject to fines, forfeitures or other liability imposed by any local or state authority as a result of interference appearing in home electronic equipment or systems. Rather, the Conferees intend that regulation of RFI phenomena shall be imposed only by the Commission.

---

[3]Inexplicably, the FCC has not intervened here when this case concerns a local government impinging on the FCC's authority.

Id. at 33, 1982 U.S.C.C.A.N. at 2277.  Although this discussion addressed the specific statutory provision over home electronic equipment RFI, it evidences Congress's intent that the FCC have exclusive jurisdiction over RFI complaints. See In re Freeman , 975 F. Supp. at 574.

The BOCC argues that the amendments in the Telecommunications Act of 1996 altered the FCC's authority such that the Interference Regulation is permissible under the section entitled "Preservation of local zoning authority." 47 U.S.C. § 332(c)(7).  However, section 332(c)(7) only preserves local "decisions regarding the placement, construction, and modification of personal wireless service facilities."    Id.  The Conference Report on the Telecommunications Act of 1996 explains that "[t]he limitations on the role and powers of the Commission under [§ 332(c)(7)] relate to local land use regulations and are not intended to limit or affect the Commission's general authority over radio telecommunications  , including the authority to regulate the construction, modification and operation of radio facilities." H. Rep. No. 104-458, at 209 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 223 (emphasis added).  Thus, the 1996 amendments did not alter the FCC's general authority over radio transmissions granted by earlier communications legislation.  The BOCC Interference Regulation extends beyond traditional zoning authority (placement,

construction, and modification) and into radio telecommunications, an area of FCC authority.

We also reject the BOCC's contention that its Interference Regulation is permissible under 47 U.S.C. § 253(b), added by the Telecommunications Act of 1996, that states: "Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis . . . requirements necessary to preserve and advance universal service, [and] protect the public safety and welfare . . . ." Id. We agree with the district court that:

> Section 253, by its very title ["Removal of barriers to entry"], is designed to deal only with barriers to market entry. It is not a mechanism by which states and municipalities can regulate RFI . . . . Nothing in § 253(b) casts any doubt on federal RFI preemption. At most, the section merely preserves certain existing rights of local governing authorities which are not inconsistent with federal law.

Southwestern Bell Wireless, Inc. v. Board of County Comm'rs, No. 97-2481-GTV, slip op. at 12 (D. Kan. Aug. 28, 1998); Appellant's Br. at 404. Also, section 253(b) applies only to state, not local, regulation, since, in the remainder of section 253, Congress clearly says "State or local" when it so intends. See 47 U.S.C. § 253(a), (c), (d). Thus, the BOCC cannot rely on section 253(b) for any authority for its Interference Amendment.

We next examine FCC regulations regarding RFI issues. The Supreme Court has "held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes." Hillsborough County v. Automated

-11-

Med. Lab., Inc. , 471 U.S. 707, 713 (1985). The FCC has authority to promulgate regulations "as it may deem necessary to prevent interference between stations." 47 U.S.C. § 303(f). FCC's regulations show its broad authority over RFI issues. A function of the FCC Compliance and Information Bureau is to "[r]educe or eliminate interference to authorized communications," 47 C.F.R. § 0.111(e), with assistance from the Wireless Telecommunications Bureau, see 47 C.F.R. § 0.131(h). The FCC has promulgated rules to resolve interference disputes in various contexts. See e.g., 47 C.F.R. §§ 22.353, 24.237, 27.58, 90.173(b), 90.403(e). The FCC can assess a fine ("forfeiture") for failure to comply with an FCC permit or license. See 47 C.F.R. § 1.80(a)(1), (b)(4) (suggested forfeiture amount for interference is $7000 per violation).

Finally, we look to agency decisions that address preemption of local regulation of RFI issues. As the Supreme Court stated:

> If the agency's choice to pre-empt 'represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.

City of New York v. FCC , 486 U.S. 57, 64 (1988) (upholding FCC's choice to preempt state technical standards over cable television signals) (citation omitted). In challenges to local zoning ordinances or permit conditions that would regulate RFI, the FCC has ruled that it has exclusive jurisdiction over RFI. See In re

-12-

Mobilecomm of New York, Inc. , 2 F.C.C.R. 5519 (1987) (invalidating local zoning ordinance regulating RFI, finding "Congress undoubtedly intended federal regulation to completely occupy [the RFI] field to the exclusion of local and state governments"); In re 960 Radio, Inc. , FCC 85-578, 1985 WL 193883 (Nov. 4, 1985) (finding local zoning board preempted from imposing RFI requirement on radio station in conditional use permit). The statutes and legislative history indicate that Congress does sanction FCC preemption of RFI issues. RFI is a federal interest and requires a national approach to regulate the field. See Fetterman v. Green , 689 A.2d 289, 294 (Pa. Super. Ct. 1997) (holding RFI "involves the resolution of technical matters ceded to the FCC due to the need for national uniformity and consensus").

This analysis is consistent with decisions of virtually all courts considering RFI preemption. See In re Freeman , 975 F. Supp. at 574 (finding local zoning RFI permit conditions preempted "given the FCC's pervasive regulation in this area"); Helm v. Louisville Two-Way Radio Corp. , 667 S.W.2d 691, 693 (Ky. 1984) (holding that police chief's remedy for interference with police broadcasts is with the FCC because power to "control, regulate, or prohibit radio transmissions" is preempted by Congress) ; see also Broyde v. Gotham Tower, Inc., 13 F.3d 994, 997 (6th Cir. 1994) (affirming dismissal of nuisance suit regarding interference with home electronic equipment because RFI fell within

-13-

FCC's exclusive jurisdiction over radio transmission technical matters); Still v. Michaels , 791 F. Supp. 248, 252 (D. Ariz. 1992) (dismissing nuisance suit claiming interference from radio transmissions because "obstruction[s] to the FCC's ability to regulate radio frequencies are preempted"); Monfort v. Larson , 693 N.Y.S.2d 286, 288 (N.Y. App. Div. 1999) (holding tort claims preempted and "claims of radio frequency interference must be brought to the FCC . . . which has exclusive jurisdiction"); Fetterman , 689 A.2d at 294 (holding Congress preempted state common law claims involving RFI); Smith v. Calvary Educ. Broad. Network , 783 S.W.2d 533, 535 (Mo. Ct. App. 1990) (upholding dismissal of injunction action as preempted finding "that interference caused by radio transmission is . . . a technical matter and that the FCC's control thereof is exclusive"); Still v. Michaels , 803 P.2d 124, 125 (Ariz. Ct. App. 1990) (finding exclusive FCC regulation of RFI precludes nuisance action); Blackburn v. Doubleday Broad. Co. , 353 N.W.2d 550, 556 (Minn. 1984) (affirming dismissal of nuisance suit against radio stations because Congress delegated to the FCC exclusive jurisdiction over RFI regulation and preempted the claims). But cf. Winfield Village Coop. v. Ruiz , 537 N.E.2d 331, 333 (Ill. App. Ct. 1989) (finding no preemption of breach of contract action between landlord and tenant based on RFI claim because no state RFI regulation was involved and "dispute is private in nature").

We agree with these courts and the district court in this case that based on statutes and agency regulations and adjudications, Congress intended federal regulation of RFI issues to be so pervasive as to occupy the field. Thus, the Interference Amendment and Interference Stipulation are void as preempted. [4] Because we find field preemption, we need not address whether the Interference Amendment actually conflicts with federal law.

## B. Tenth Amendment

The BOCC argues that preemption of the Interference Regulation violates the Tenth Amendment and federalism principles because zoning and public safety

---

[4]The BOCC also appears to argue against preemption claiming it leaves the county without a remedy because the FCC allegedly cannot adequately address its RFI concerns. To the contrary, administrative remedies are clearly available. The BOCC can petition the FCC to resolve interference problems. See e.g., 47 C.F.R. §§ 0.471, 0.473. The FCC can hold proceedings for investigation, see 47 C.F.R. § 1.1, issue declaratory rulings, see 47 C.F.R. § 1.2, and consider informal written complaints, see 47 C.F.R. § 1.41. The BOCC may also file petitions to deny SW Bell license or renewal applications filed with the FCC. See 47 U.S.C. § 309(d); 47 C.F.R. §§ 26.320, 27.320. After taking such action, aggrieved parties may seek review of FCC decisions and orders in the United States Court of Appeals for the District of Columbia Circuit. See 47 U.S.C. § 402(b)(6). In addition, the FCC recently announced Memoranda of Understanding between the FCC Compliance and Information Bureau, the FCC Wireless Telecommunications Bureau, the Industrial Telecommunications Association, and the Association of Public Safety Communications Officials "to dramatically streamline the Commission's compliance and enforcement process in the resolution of interference complaints." FCC Compliance and Information Action, Rept. No. CI 98-7, 1998 WL 207911 (Apr. 29, 1998); Rept. No. CI 98-12, 1998 WL 396675 (July 17, 1998).

-15-

are traditional powers reserved to the states. Although the BOCC relies on Hillsborough County v. Automated Med. Lab., Inc., 471 U.S. 707 (1985), the case does not support their argument. The Supreme Court in Hillsborough upheld a county ordinance regulating health—an area of traditional state power—despite federal regulation in the area. However, the Court found no implied preemption because the federal agency explicitly stated its intention not to preempt state and local regulations. See id. at 714, 716. Thus, Hillsborough is inapplicable here because the FCC has explicitly stated its intention to preempt local regulations on RFI, see In re Mobilecomm, 2 F.C.C.R. 5519; In re 960 Radio, FCC 85-578, 1985 WL 193883, and the statutes and legislative history support Congress's intent to occupy the field of RFI issues.

"[H]istoric police powers of the States" are not to be preempted by federal law "unless that was the clear and manifest purpose of Congress." Mortier, 501 U.S. at 605 (quoting Rice, 331 U.S. at 230). However, as the Supreme Court has noted, preemption principles apply even to a "matter of special concern to the States: 'The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail.'" Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982) (evaluating preemption of state real property law) (quoting Free v. Bland, 369 U.S. 663, 666 (1962)). Although the

-16-

BOCC characterizes the issue as local police power, RFI regulation is not a traditional local interest but a national interest preempted by federal legislation. Congress can regulate communications pursuant to the Commerce Clause.       See FCC v. League of Women Voters, 468 U.S. 364, 375 (1984).  Indeed, as the BOCC concedes, the local police and fire departments obtain their communication licenses from the FCC.  A patchwork of varied local regulations across the country would prevent a functional national telecommunications network.  Thus, federal preemption of RFI regulation does not violate the Tenth Amendment.

## C.  Limit of District Court's Order

We reject the BOCC's contention that the district court erred by concluding that federal law preempted the entire zoning regulation rather than limiting its ruling to specific provisions.  The district court order is limited to the specific relief sought in SW Bell's Complaint and Motion for Summary Judgment, i.e. that the Interference Amendment, art. 23, § 6(B)(4)(f), and the Interference Stipulation, OL-CU-1714, Stipulation No. 15, are void.  Contrary to the BOCC's suggestion, the court could not read the Interference Regulation narrowly so as to be consistent with federal law because the field of RFI regulation is entirely preempted by federal legislation.

-17-

## D. Issue of Material Fact

Also, we reject the BOCC's assertion that the district court erred by finding no genuine issue of material fact. The BOCC argues discovery was incomplete, the court failed to consider issues of material fact, and "the Court clearly drew inferences of fact favorably for SW Bell rather than the County as the nonmoving party." Appellant's Br. at 10. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On the determinative issue of preemption, the material facts regarding the Interference Amendment, Interference Stipulation, and federal communications laws and regulations are not in dispute and, thus, no further discovery is necessary.

## III. CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.